ADRIENNE C. ALT and DAVID R. ALT, Plaintiffs-Appellants, *v.* JAMES KRUEGER and JAMES KRUEGER, Attorney at Law, a Law Corporation, Defendants-Appellees, and FIRST INSURANCE COMPANY OF HAWAII, LTD., a Hawaii corporation, Defendant

NO. 8259

(CIVIL NO. 54344)

MAY 17, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

Plaintiffs-appellants Adrienne C. Alt (Adrienne) and David R. Alt (David) (where appropriate herein Adrienne and David will be jointly referred to as appellants) appeal from an adverse jury verdict and judgment in their action against defendants-appellees James Krueger and James Krueger, Attorney at Law, a Law Corporation (Krueger). We find no reversible error and affirm.

The case arises out of appellants' claim for injuries suffered by Adrienne[1] as a result of two automobile accidents occurring approximately ten months apart, the first in December 1972 and the second on October 23, 1973. Adrienne was originally represented by David C. Schutter, Esq., who settled the first claim for $7,500 and received a settlement offer of $15,000 for

---

[1] David is a plaintiff in this action, apparently seeking damages for lost of consortium, although he and Adrienne were not married until after the second accident.

the second claim. Adrienne agreed to the settlement of the second claim and signed a release thereof, but later changed her mind. She also decided to change lawyers and employed Krueger to represent her for a 40% contingency fee. However, there is some question whether a written employment contract was executed by Adrienne and Krueger.

Krueger filed suit (Civil No. 46486) on the second claim and trial was set for May 22 or 23, 1977.[2] On Monday, May 9, 1977 Krueger met with Tom Farrell (Farrell), the claims adjustor for the insurance carrier for the defendant in that case, to attempt settlement of the claim. At that time, Farrell indicated that they had previously experienced difficulty settling with Adrienne and asked if Krueger had authority to settle her claim. Krueger indicated he did not and Farrell suggested that Krueger call Adrienne to discuss a minimum figure for settlement.

Krueger called Adrienne by phone and explained that he was meeting with Farrell to discuss settlement. Krueger told her Farrell had offered $50,000 but Krueger needed to have from her a minimum figure that she would authorize him to settle her case for and below which he would not go in negotiations. He told her that at that point he was asking for $70,000 from Farrell. Krueger and Adrienne spoke for about a half hour about the various aspects of the case. Krueger also spoke briefly to David. Adrienne asked for time to consider the question and Krueger agreed to call her back.

In the period before Krueger called back, Adrienne sought the advice of her mother and David, but neither was able to assist her. Krueger testified that when he called back, Adrienne told him, "Okay. You can settle my case for sixty thousand, but if you can get more, fine." Adrienne testified she felt she had to say something so she said "sixty thousand."

Krueger then negotiated further with Farrell and agreed upon $60,000 to settle Adrienne's claims. Krueger testified that

[2] The original complaint named Krueger and First Insurance Company of Hawaii, Ltd., as defendants. On July 2, 1979, a stipulation was entered among all parties dismissing First Insurance Company as a defendant. On August 14, 1979, an amended complaint was filed against Krueger and the law corporation.

he called Adrienne back, told her the case was settled, and arranged to meet Adrienne and David on the following Friday (May 13, 1977) to sign the papers. He testified that Adrienne said, "That's fine. I'll see you Friday."

Adrienne testified that in the third phone call Krueger had not clearly stated that the case was settled. She testified that after the third call, she felt as if she had said things she never wanted to say. The next day (May 10, 1977) she tried to reach Krueger, but was unsuccessful. On Wednesday, May 11, 1977 Adrienne left a message with Krueger's office that she was not settling.

After reaching the oral agreement with Farrell, Krueger signed a release of the claim, obtained the check for $60,000 dated May 10, 1977, and negotiated it by endorsing it in his, David's and Adrienne's names.[3] On May 12, 1977 (Thursday) a minute order was entered by the judge assigned to hear the case indicating that the case was settled. A dismissal was also signed by the court on that day.

Appellants filed their original complaint herein on April 11, 1978 and an amended complaint on August 14, 1979. The amended complaint alleged that there was no written employment contract between the parties and that Adrienne "reluctantly agreed" to a minimum settlement figure of $60,000, but that she had not agreed to accept that amount as full settlement and had expected Krueger to negotiate for a higher figure. The amended complaint also alleged that Krueger had endorsed the settlement check on plaintiffs' behalf without their express permission and authorization, contrary to the custom and practice of lawyers engaged in Hawaii in the personal injury field. The complaint further alleged that by his actions Krueger had deprived them of proper compensation for their claim in an amount not less than $150,000.

---

[3] The payees of the check were "Adrienne Alt, David Alt, James Krueger, and Schutter and Levinson," Schutter's law firm. The endorsement read, "Adrienne Alt David Alt by their attorney, James Krueger, James Krueger, and Schutter and Levinson." It is not clear if Krueger also endorsed on behalf of Schutter and Levinson. The check was deposited to Krueger's account, but we cannot tell on what date.

Appellants prayed (1) that Krueger be required to repay all monies retained by him as his fees or to refund any money over and above a reasonable fee based on quantum meruit; (2) damages for mental and emotional distress; and (3) punitive damages.[4]

On the morning of trial, the court bifurcated the issues and held that the jury would only consider liability, i.e., the question of whether Krueger had authority to settle the case, stating:

THE COURT: I want you to bear in mind that Civil No. 46486 entitled Alt, et al., versus Airport Volkswagen, et al., from which the settlement has arisen, that this matter was assigned to Judge Herman Lum for trial for the week of May the 23rd, 1977. Trial of this case was imminent.

There is a minute order dated May the 12th, signed by the Clerk of Judge Lum's Court that the matter was settled. This was dated May the 12th. So it's not only a matter of relief, but the Court was notified that the case was settled.

Predicated on that, the only question that this jury will determine is whether or not Mr. Krueger had authority to settle the case for sixty thousand dollars. What follows after that has no bearing whatsoever in this case. It's unlike a case where negotiations are being conducted prior to trial.

Trial is imminent. This matter was assigned to Judge Lum. Once it is assigned and settlement is noted, pursuant to the minutes of Judge Lum's Court, it's an enforcible [sic] settlement. That took place on the 12th of May.

MR. VENTURA: I might add in addition to that that Judge Fong signed the dismissal on May the 12th.

THE COURT: It's on the record. Dismissal with preju-

---

[4] Although the complaint alleged that appellants' claim was really worth $150,000, and that the $60,000 settlement was totally inadequate, there is no prayer for the balance between $60,000 and $150,000. The complaint contains a prayer for general relief, but it merely asks for relief "as alleged herein, and for judgment in such amount as shall be proved hereunder." We question whether such a general prayer includes the above balance.

dice was signed by both parties on the record dated May the 12th.

In the special verdict form, the jury found that Adrienne authorized Krueger to settle her case for $60,000. Judgment was entered for defendants below on February 11, 1981.

Although appellants raise a number of points of error, we reduce them to the following four issues: (1) Did the court err in bifurcating the trial? (2) Did the court err in excluding certain evidence offered by appellants? (3) Did the court err in refusing to continue the trial in order to allow Adrienne to bring in a witness who was unavailable to testify on the first day of trial? (4) Does the record show that the attitude of the judge towards appellants and their counsel was hostile and precluded their receiving a fair trial? We answer all questions no.

I.

Appellants argue (Point of Error No. 5) that when the court limited the scope of the trial to the sole issue of whether Krueger was authorized to settle their claim for $60,000, they were precluded from proving their claim based upon Krueger's unauthorized endorsement of the settlement check and on their claim for intentional infliction of emotional distress.

A decision to bifurcate a trial pursuant to Rule 52(b), Hawaii Rules of Civil Procedure (HRCP) (1972, as amended), is within the discretion of the court. 5 Moore's Federal Practice ¶ 42.03[1], p. 42-41 (2d ed. 1982); 9 Wright & Miller, Federal Practice & Procedure: *Civil* § 2388 (1971); *Idzojtic v. Pennsylvania Railroad Co.,* 456 F.2d 1228 (3rd Cir. 1972); *Sanders v. Point After, Inc.,* 2 Haw. App. 65, 626 P.2d 193 (1981). Matters resting within the discretion of the court will not be overturned on appeal absent an abuse of discretion. *Friedrich v. Department of Transportation,* 60 Haw. 32, 586 P.2d 1037 (1978); *Sherry v. Asing,* 56 Haw. 135, 531 P.2d 648 (1975); *Title Guaranty Escrow Services, Inc. v. Powley,* 2 Haw. App. 265, 630 P.2d 642 (1981); *State v. Wilkins,* 1 Haw. App. 546, 622 P.2d 620 (1981). Appellant bears the burden of proof that the trial court's decision "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the sub-

stantial detriment of a party litigant." *Title Guaranty Escrow Services, Inc. v. Powley, supra; Hawaii Automotive Retail Gasoline Dealers Association, Inc. v. Brodie,* 2 Haw. App. 99, 626 P.2d 1173 (1981); *GLA Inc. v. Spengler,* 1 Haw. App. 647, 623 P.2d 1283 (1981).

We think the issues in this case were sufficiently independent so that the court could properly order separate consideration. The law is clear that an attorney cannot compromise and settle a client's claim without specific authorization to do so. 7 Am. Jur. 2d *Attorneys At Law* § 156 (1980); *Cross v. District Court,* ___ Colo. ___, 643 P.2d 39 (1982); *Navrides v. Zurich Insurance Co.,* 5 Cal. 3d 698, 702 n.1; 488 P.2d 637, 639 n.1, 97 Cal. Rptr. 309, 311 n.1 (1971). However, the attorney-client relationship is that of principal and agent, *Johnson v. Tesky,* 57 Or. App. 133, 643 P.2d 1344 (1981), and the client is bound by the acts of his attorney within the scope of the latter's authority. 7 Am. Jur. 2d, *supra* § 131. Therefore, the threshold question of authorization was determinative of all other issues.

The real thrust of appellants' case was that Krueger did not have authority to settle the case at the $60,000 figure. If he was so authorized, then everything that followed in processing the settlement could not give rise to a claim for damages, unless appellants were deprived of their just share of the settlement amount. We do not agree with appellants that a separate cause of action arose from Krueger's endorsement and negotiation of the check, since there is no claim that they have not received their proper share of the proceeds. *Cf. Navrides v. Zurich Insurance Co., supra* (court held that suit against tort feasor for amount of settlement made by plaintiff's attorney without authorization ratified the unauthorized acts).

Moreover, a trial of any claim for punitive damages arising out of Krueger's allegedly intentional, callous and wanton disregard for the rights, feelings and sensitivities of the plaintiffs could easily await determination of the primary issue of authorization. If the jury found that Krueger was authorized, however, then he could not be liable for any damages, and certainly not punitive damages. *Cf. Johnson v. Robert's Hawaii Tour, Inc.,* 4 Haw. App. 175, 664 P.2d 262 (1983).

Appellants have not shown that the separate trials ordered by the court did not serve the ends delineated in Rule 42(b),

HRCP (1972, as amended).[5] Consequently, we find no abuse of discretion.

2.

Appellants argue (Points of Error No. 1, 2, 3 and 4) that the court erred in excluding evidence of whether or not there was an employment contract between the parties; of Adrienne's and David's understanding of the alleged settlement authorization and Adrienne's actions after the settlement; of the custom and practice of the legal profession in processing claim settlements in Hawaii; and of deposition testimony contradicting Krueger's trial testimony.

The court in the exercise of its discretion having properly limited the trial to the issue of authorization, the evidence relating to the employment contract, David's understanding of the settlement and Adrienne's actions, and the custom and practice of processing claims was clearly and entirely irrelevant. None of the evidence tended in any way to make the existence of any fact of consequence to the determination of the question of authorization more or less probable than it would have been without the evidence. Rule 401, Hawaii Rules of Evidence, Chapter 626, Hawaii Revised Statutes.

Appellants argue that evidence of their understanding of the settlement and its finality and of Adrienne's actions following the third phone conversation was relevant to determine whether or not the settlement was binding on them before they met with Krueger and signed any documents. Krueger argues the evidence was irrelevant because once the authorization was given and an oral agreement reached between him and Farrell, the settlement was binding and enforceable. We agree with Krueger. *See Sheffield v. Poly-Glaz, Inc. v. Humboldt Glass Co.,* 42 Ill. App. 3d 865, 356 N.E.2d 837 (1976).

---

[5] The pertinent part of Rule 42(b), HRCP, reads as follows:

(b) Separate trials. The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial . . . of any separate issue[.]

Furthermore, the testimony of Adrienne and David was sufficient without more to allow the jury to determine the question at issue.

Appellants argue that they should have been allowed to introduce the depositions of Drs. Popper and Goebert to impeach the credibility of Krueger. The admissibility of evidence and the scope of cross-examination at trial are matters within the discretion of the trial court. *State v. Faulkner,* 1 Haw. App. 651, 624 P.2d 940 (1981). The trial court's decision to exclude impeaching evidence will not be reversed absent a showing of abuse. *Hascup v. City and County of Honolulu,* 2 Haw. App. 639, 638 P.2d 870 (1982). The appellants have not shown any abuse of discretion.

3.

The continuance of a trial to accommodate a party's witnesses is also within the discretion of the trial court and subject to reversal only upon a showing of abuse. *Sanders v. Point After, Inc., supra.* We find no showing of abuse.

When the request for a continuance was denied, appellants' counsel made no offer of proof as to the testimony to be adduced from the witness. In the opening brief, appellants indicate that the witness, a psychiatrist, would have testified to a telephone conversation he had with Adrienne on May 13, 1977, the Friday following the settlement. The evidence would have been clearly irrelevant.

4.

We have examined the transcript very closely and, while we appreciate that the cold written word can never adequately convey to the reader such things as facial expression, "body language," and the general climate in which things are said, or the true attitude of the declarants, we find nothing whatsoever to indicate that the trial judge was hostile and intimidating to the extent of depriving appellants of a fair trial. Obviously, the trial judge was keenly interested in conserving time and money for the parties and also for the jury. A brusque and sharp

manner is not the same as a hostile attitude. Appellants' contention is without merit.

Affirmed.

*Hyman M. Greenstein* (*Wayne D. Parsons* with him on the briefs; *Greenstein & Parsons* of counsel) for plaintiffs-appellants.

*James F. Ventura* (*Roy F. Hughes* with him on the brief; *Libkuman, Ventura, Moon & Ayabe* of counsel) for defendants-appellees.