JANE DOE IV, Petitioner-Appellee, *v.* RICHARD ROE IV, Respondent-Appellant

NO. 9811

(FC-PATERNITY NO. 235)

MAY 24, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY HEEN, J.

This is an appeal[1] from a decision of the Third Circuit Family Court declaring Appellant to be the natural father of Appellee's child, born on September 6, 1966, and ordering him to provide current support for said child and to reimburse the Department of Social Services and Housing (DSSH) for past support it rendered for the child and its costs of suit. We affirm the judgment as modified herein.

After a bench trial on November 7, 1980, and March 11-12, 1982, Appellant was adjudged on July 6, 1982, to be the father of the child. After further hearings, Appellant was ordered on November 28, 1983, to pay $225 per month for the current sup-

---

[1] This is the third appeal in this case. On July 30, 1982, Appellant appealed the trial court's judgment of paternity, and on September 24, 1982, Appellee appealed the trial court's August 27, 1982, denial of her motion for fees and costs. On May 12, 1983, Appellee withdrew her appeal and on June 7, 1983, the supreme court dismissed Appellant's first appeal because the order appealed from was not a final judgment, the trial court not having determined the matter of support for the child.

port of the child; and to reimburse the DSSH $12,489[2] for payments previously made by it for the child's support, and $4,897.83 for its costs and fees incurred in the suit. On December 27, 1983, Appellant filed his notice of appeal.[3]

Appellant makes the following four-pronged attack on the judgment below:

(I) The action was untimely;

(II) He was wrongly denied his right to a jury trial;

(III) The judgment that he is the father of Appellee's child is in error because the trial court's findings of fact are inadequate and based on evidence wrongly admitted by the trial court; and

(IV) The trial court erred in awarding judgment to the DSSH for reimbursement for past child support payments and for the costs and fees incurred in this action.

## I. TIMELINESS OF THE ACTION

The child in this case was born on September 6, 1966, and the action was filed on September 28, 1976. Under the previous paternity statutes, such actions were required to be instituted within two years of the birth of the child. Hawaii Revised Statutes (HRS) § 579-10 (1968). Thus, this action would have been barred after September 6, 1968, under the old statute. In 1975 the Uniform Parentage Act was enacted, Act 66, 1975 Haw. Sess. Laws 115-26, which extended the period of limitation to three years after the birth of the child or three years after the effective date of the act, whichever is later. HRS § 584-7 (1976).[4]

---

[2] DSSH furnished support during the following periods: July 1975 through September 1975; September 1977 through April 1980; February 1981 through August 1983.

[3] On January 3, 1984, Appellant filed a Motion to Amend the Order of November 28, 1983, Relating to Fees and Costs. The motion was not only untimely under Rule 59(g), Hawaii Family Court Rules (HFCR) (1982) but was also made after the notice of appeal was filed. Therefore, it could not be considered by the court below (there is no disposition in the record) and has no effect on appellate jurisdiction. *See* Rule 4(a)(4), Hawaii Rules of Appellate Procedure (HRAP) (1984).

[4] HRS § 584-7 (1976) provides:

Statute of limitations. Except as otherwise provided in section 584-6(a) with respect to a child relinquished for adoption an action to determine the existence

Appellant argues that he specifically relied on the former two-year statute of limitations and, under the case-by-case approach established in *Roe v. Doe,* 59 Haw. 259, 581 P.2d 310 (1978), the retroactive application of HRS § 584-7 to revive this claim violates his constitutional due process rights. In *Roe* the supreme court held that the revival of a paternity action occasioned by the extended limitation period of § 584-7 was not unconstitutional *per se,* but that the actual retrospective effects on the defendant of a statute allowing revival must be examined on a case-by-case basis to determine whether a defendant's constitutional right to due process has been violated.

> If a putative father, named in a paternity proceeding, were able to demonstrate that he had acted in specific reliance on the bar of the statute of limitations and that special hardships or oppressive results would follow from the lifting of the bar, retrospective application of HRS § 584-7 might not be constitutionally permissible. Absent such a demonstration of direct reliance and resultant hardship, it would not be possible to say that the defendant was deprived of any constitutional right.

*Id.* at 271, 581 P.2d at 318.

The circumstances of this case are strikingly similar to those in *Doe III v. Roe III,* 3 Haw. App. 241, 648 P.2d 199 (1982). In *Doe III,* we held that respondent had not shown "specific reliance" on the two-year limitation period where he testified that he had no knowledge of the limitation period. Here, Appellant has not directed us to anything in the record that indicates his knowledge or reliance on the two-year limitation. *See Doe v. Roe,* 67 Haw. 63, 677 P.2d 468 (1984).

---

of the father and child relationship as to a child who has no presumed father under section 584-4 shall not be brought later than three years after the birth of the child, or later than three years after the effective date of this chapter, whichever is later. Sections 584-6 and 584-7 shall not extend the time within which a right of inheritance or a right to a succession may be asserted beyond the time provided by law relating to distribution and closing of decedents' estates or to the determination of heirship, or otherwise.

In 1983, HRS § 584-7 was amended, Act 288, § 2, 1983 Haw. Sess. Laws 615, 616, to allow the child or its personal representative to bring the action not later than three years after the child reaches majority. In *Pickett v. Brown,* 462 U.S. 1, 103 S. Ct. 2199, 76 L.Ed.2d 372 (1983), the Supreme Court held that the Tennessee statute of limitations requiring that actions to establish paternity be brought within two years of the child's birth denied the child the equal protection of the laws.

Moreover, we are not convinced that the consequences of applying HRS § 584-7 in this case constitute the "special hardships" or "oppressive results" alluded to in *Roe v. Doe, supra,* as giving rise to the due process protection. The fact that Appellee had indicated to authorities that Appellant was the father and yet no suit was filed until 1976, and that the action was jeopardizing his marriage is not evidence of such consequences. Appellant asserts, however, that had the action been brought within the original statutory period, he might have been able to contact witnesses to testify for him. However, he has not indicated that he had in fact attempted to contact any such witnesses or what their testimony would be.

Neither has Appellant been prejudiced because HRS § 584-14 (Supp. 1984) does not afford him the right to a jury trial, which he had under the prior statute, HRS § 579-2 (1968), or the right to question Appellee regarding relations with other males. First, as will be discussed in section II, Appellant does not have a constitutional or fundamental right to a jury trial in this case. Second, the statute does not foreclose all testimony regarding sexual relations, but only such relations allegedly occurring with unidentified men or with identified men other than during the conception period.[5] We see no prejudice in the statutory limitation, since the prohibited evidence is irrelevant.

The above analysis of Appellant's due process argument also strikes down his argument that laches bars this action, since he cannot show prejudice resulting from the delay in bringing suit. *Adair v. Hustace,* 64 Haw. 314, 321, 640 P.2d 294, 300 (1982).

---

[5] HRS § 584-14(b) (Supp. 1984) provides in pertinent part as follows:

Civil action. (a) An action under this chapter shall be a civil action governed by the Hawaii Rules of Civil Procedure or the Hawaii Family Court Rules. The mother of the child and the alleged father shall be competent to testify and may be compelled to testify, provided that no criminal prosecution, other than a prosecution for perjury, shall afterwards be had against the mother or the alleged father for or on account of any transaction, matter or thing concerning which she or he may testify or produce evidence, documentary or otherwise. Sections 584-11 and 584-12 shall apply in any action brought under this chapter.

(b) Testimony relating to sexual access to the mother by an unidentified man at any time or by an identified man at a time other than the probable time of conception of the child shall be inadmissible in evidence, unless offered by the mother.

## II. JURY TRIAL

Appellant contends he is entitled to a jury trial under (1) HRS §
584-14 (Supp. 1984), and (2) the constitutions of the United States
and Hawaii.[6] His argument is untenable.

### A.

Appellant first asserts that, (1) HRS § 579-2 (1968), the pre-
decessor to HRS § 584-14, allowed jury trials as a matter of right in
paternity actions; (2) when HRS § 584-14 was enacted, its title read,
"Civil action; jury"; and (3) the provision of the Model Uniform
Parentage Act § 14(d), that "[t]he trial shall be by the court without
a jury" was specifically left out of § 584-14; (4) therefore, the intent
of the legislature must have been to continue the right to jury trials
in paternity suits. We disagree.

The language of § 584-14 in the context of the entire chapter
584 convinces us that the legislature did not intend to provide for
jury trials in paternity actions. The repeal of § 579-2 (1968) is a
clear indication of the legislature's intent. Inclusion of the word
"jury" in the title of § 584-14 is of no import, and neither is the
omission of the language of the model act. Statutory language must
be read in the context of the entire statute and construed in a
manner consistent with the purposes of the statute. *Waikiki Resort
Hotel, Inc. v. City and County of Honolulu,* 63 Haw. 222, 244-45, 624
P.2d 1353, 1369 (1981).

We are buttressed in our conclusion by the fact that in 1979,
prior to this trial, the title to HRS § 584-14 was amended to read
simply "Civil action." In enacting the amendment, the legislature
noted that it was amending "H.R.S., section 584-14, to conform its
caption to its subject matter, *which has nothing to do with juries."* Hse.
Stand. Comm. Rep. No. 628, in 1979 House Journal, at 1441 (em-
phasis added). That is a clear legislative statement that proceedings
under HRS chapter 584 were not to be tried by jury.

---

[6] United States Const., amend. VII, and Hawaii State Const., art. I, § 13 (Supp.
1984).

## B.

We are also unpersuaded by Appellant's argument that he has a right to a jury trial under both the United States and Hawaii Constitutions.

Both constitutions preserve the right to a jury trial "[i]n suits at common law[.]" U.S. Const. amend. VII; Hawaii Const. art. I, § 13 (Supp. 1984). A paternity action is not a suit at common law, *Roe v. Doe*, 59 Haw. 259, 266, 581 P.2d 310, 315 (1978), and, therefore, Appellant has no constitutional right to a jury trial. *See Harada v. Burns*, 50 Haw. 528, 445 P.2d 376 (1968); *Loo v. Gerarge*, 374 F. Supp. 1338 (D. Haw. 1974).

### III. JUDGMENT OF PATERNITY

#### A. Findings of Fact

Appellant charges that the lower court's findings of fact are insufficient and do not satisfy the requirements of Rule 52(a), Hawaii Family Court Rules (HFCR) (1982).[7]

"Where an appellant alleges that the trial court failed to make adequate findings of fact, the appellate court will examine all the findings, as made, to determine whether they are (1) supported by the evidence; and (2) sufficiently comprehensive and pertinent to the issues in the case to form a basis for the conclusions of law." *Nani Koolau Co. v. K & M Construction, Inc.*, 5 Haw. App. 137, 140, 681 P.2d 580, 584 (1984) (citations omitted).

Here, Appellant focuses on element two in *Nani Koolau*, arguing that "[t]here are no determinations of the subsidiary facts which support the trial court's ultimate determinations of factual issues raised at the trial."

The trial judge is required to "only make brief, definite, pertinent findings and conclusions upon the contested matters; there is no necessity for over-elaboration of detail or particularization of facts." *Tugaeff v. Tugaeff*, 42 Haw. 455, 467 (1958) (quoting Moore's Federal Practice, 2d Ed. § 52.05[1]); 5A Moore's Federal Practice § 52.05[1] (2d ed.). All that is required are brief, definite and perti-

---

[7] Rule 52(a), HFCR, is substantially the same as Rule 52(a), Hawaii Rules of Civil Procedure (HRCP) (1981).

nent findings, not elaborate findings nor negative findings of fact. 9 Wright & Miller, Federal Practice & Procedure: *Civil* § 2579 (1971).

Here, the trial court's findings of fact were short, direct and concise; at the same time they were sufficiently comprehensive and pertinent to the issues to disclose to this court the steps by which it reached its ultimate conclusion on each factual issue. *Nani Koolau Co. v. K & M Construction, Inc., supra.*

### B. Evidence as to Conception and Gestation

Appellant contends that the trial court erroneously found that the period of conception was between November 15 and December 15, 1965, because it erred in allowing Appellee to testify that hers was a "full-term" pregnancy and in taking judicial notice that the average period of gestation is 270 days.

In essence, Appellant here attacks the court's finding of fact no. 1,[8] although he has not assigned it as error. He argues that the period of gestation is a "medical" fact about which Appellee was not competent to testify, and that the trial court did not have sufficient facts to support judicial notice of the length of the gestation period. We disagree.

> It has been widely held that the state of pregnancy is such a common condition that a woman may give her opinion that she herself is pregnant. . . . We see no reason not to extend the rule to allow her to testify to the date when she became pregnant if her opinion is based entirely upon facts within her direct knowledge[.]

*Moody v. Pinto,* 436 A.2d 1099, 1100 (Conn. Super. Ct. 1981) (citations omitted). *See Territory v. Lanier,* 40 Haw. 65, 77-78 (1953) (complaining witness was competent to testify as to acts of intercourse).[9] We, likewise, see no reason not to extend the rule so as to

---

[8] Finding of fact no. 1 states:

1. That the Petitioner had sexual intercourse with the Defendant during the period of conception, that is, between November 26, 1965 through December 26, 1965[.]

[9] In *Lanier,* 40 Haw. at 78, the court held that "[i]n the absence of a statute requiring corroboration, . . . the judge . . . may find that the defendant is the father

allow Appellee's testimony that hers was a full-term pregnancy.

The facts upon which Appellee's opinion was based were within her direct knowledge. Appellee was competent to testify as to the period of conception, and she was competent to testify as to the length of time she carried the child. Moreover, the child's weight of 6 pounds 5 ounces is medically indicative of a full-term pregnancy and corroborates her testimony. Judge M. C. Holz, *The Trial of a Paternity Case*, 50 Marq. L. R. 450, 483 (1971).

Appellant's argument that the trial court did not have sufficient facts to sustain taking judicial notice of the period of gestation is likewise untenable. In *Almeida v. Correa*, 51 Haw. 594, 605, 465 P.2d 564, 572 (1970), the supreme court approved a jury instruction that stated that the "actual duration of pregnancy is 270 days[,]" holding that the "instruction properly covered matters that were appropriate for judicial notice." The evidence as to the date of birth and weight of the child, together with Appellee's testimony that the pregnancy was "full-term" was sufficient basis for the court to find that the period of gestation was the normal 270 days and to establish thereby the period of conception.

### C. Defense of Sterility

Appellant's argument that, because his evidence showed that he had had a vasectomy prior to the period of conception, the trial court's finding of fact no. 4, that during the period of conception he was not sterile, is clearly erroneous, is without merit.

The parties stipulated that a medical examination performed in 1980 showed that Appellant bore scars indicative of a vasectomy operation, but that the precise date of the operation could not be determined. The parties also stipulated that Appellant could have remained fertile after the operation. The examination, however, took place 14 years after the birth of the child and was not probative of the fact that Appellant was infertile during the period of conception.

---

of the child upon the sole testimony of the mother providing such testimony is believed to be credible." The court noted that the statute then did not require corroboration. Neither does the present Uniform Parentage Act, HRS ch. 584.

The only evidence as to when the vasectomy was performed came from Appellant and his friend Van Meter. Obviously, the court did not believe their testimony that the vasectomy took place prior to the time of conception, and we are bound by the trial court's determination of credibility. *Nani Koolau Co. v. K & M Construction, Inc.*, 5 Haw. App. 137, 140, 681 P.2d 580, 584 (1984); *Doe III v. Roe III*, 3 Haw. App. 241, 244, 648 P.2d 199, 201 (1982).

Moreover, even assuming the vasectomy preceded conception in this case, the parties stipulated that he could have remained fertile after the operation, and Appellant did not produce any evidence showing the success of the operation by way of further tests indicating the absence of spermatozoa in the semen. *See Cochran*, 2 Wash. App. 514, 516, 468 P.2d 729, 731 (1970); Holz, *The Trial of a Paternity Case, supra*, at 472.

### D. The Human Leucocyte Antigen Test[10]

In his final attack on the court's finding of paternity, Appellant argues that the court erred in allowing expert testimony regarding the statistical probability that Appellant is the father of the child, based upon the results of a Human Leucocyte Antigen (HLA) Test.

His argument is of no avail, however, because he has not attacked the trial court's finding of fact no. 3 "[t]hat during the period of conception, the Petitioner did not have sexual intercourse with any man other than the Defendant[.]" His failure to assign that finding as error makes it binding on him. *Wisdom v. Pflueger*, 4 Haw. App. 455, 667 P.2d 844 (1983). Finding of fact no. 3, by its very terms, excludes every other male as the father of the child and whether or not the HLA test is a blood test or whether the results may be invalid in this case is irrelevant.

In summary, the trial court's findings of fact are supported by substantial evidence and are, therefore, not clearly erroneous and in turn support the trial court's conclusion of law no. 5 that Appellant is the father of Appellee's child.

---

[10] A test performed on the tissue of the leukocytes or white blood cells to determine the locus of antigens or gene markers, which determine human characteristics.

## IV. REIMBURSEMENT OF DSSH

### A. Support Arrears

Appellant argues that DSSH is not entitled to a judgment for reimbursement of the funds expended by it to provide for the support of the child in question, or for its costs of suit, because it was never a party to the action in spite of the fact that it had an assignment from Appellee of any and all rights she may have to child support. He contends that, under HRS § 584-17(a), DSSH had the authority to bring its claim separately or in the same action with Appellee and, not having done so, DSSH is not entitled to judgment. We disagree.

Appellant has no standing to complain that DSSH has been awarded judgment as assignee of Appellant's claim for arrearages in child support. Neither party has adequately briefed the focal point of the question: Can a defendant who has been found liable to plaintiff in a suit assign as error the fact that the judgment orders him to make payment to an assignee of plaintiff's interest in the litigation who is not a party to the action? *Allison v. Brashear*, 544 S.W.2d 492 (Tex. Civ. App. 1976), answers the question in the negative.

*Allison* was an action to determine heirs. In the course of preparing the suit, some of the heirs hired one Altshuler to search for other heirs and assigned to him a portion of their shares of the decedent's estate as payment for his services. Altshuler, though not a party, appeared at the trial and introduced his assignments into evidence. In its award the trial court ordered the administrator to issue checks for the interests of the assigning heirs in their names and Altshuler's name jointly. On appeal from that order by the estate's administrator, the Texas court held that the administrator was not the party affected by the judgment honoring the assignment and had no standing to assert error. The court stated:

> The heirs were parties to the suit, and the Court had jurisdiction over them as well as the property. Only they could complain of the Court's award . . . to their assignee, and the procedure for payment to them by the joint checks. They have not complained. In fact, by their assignments they permitted the Court's action.

*Id.* at 494-95.

The situation in the instant case closely parallels *Allison*. Paternity having been determined, Appellee became entitled to, and Appellant responsible for, current support for the child and reimbursement for past child support. As assignee of Appellee's interest, DSSH was entitled to receive reimbursement from her of any money she received for support. Contrary to Appellant's assertion, DSSH was not required to bring suit so long as Appellee honored her assignment, and she has made no complaint about the judgment in favor of DSSH. Appellant is liable for the arrearage and whether he pays indirectly through Appellee or directly to DSSH is no concern of his.

Likewise, we are not persuaded by Appellant's argument that there was no proof of the past needs of the child to support the amount of the arrearage award. The evidence shows the amount contributed by DSSH to the child's support under the Aid to Families with Dependent Children (AFDC) program for a period of fifty months. We take judicial notice that the AFDC program as administered by DSSH provides only the basic necessities of such children. There was sufficient evidence for the trial court to find that the amount expended by DSSH was reasonably necessary to provide for the past needs of the child and that Appellant should reimburse DSSH therefor.

We find no merit in Appellant's other arguments regarding DSSH's rights under the assignment.

### B. Fees and Costs[11]

Appellant's threshold argument that the trial court erred in ordering costs to be paid by him to DSSH is the same as that made in regard to reimbursement of child support arrears. Under the provisions of HRS § 584-16, the court may order reasonable fees of experts and other costs of the action and pretrial proceedings to be

---

[11] HRS § 584-16 (1976) provides as follows:

Costs. The court may order reasonable fees of counsel, experts, and the child's guardian ad litem, and other costs of the action and pre-trial proceedings, including blood tests, to be paid by the parties in proportions and at times determined by the court. The court may order the proportion of any indigent party to be paid by the State, or such person as the court shall direct.

paid by the parties. We hold that the language of the statute is broad enough to support the lower court's order in this case. The purpose of the statute is to apportion the costs of suit. Appellant is clearly subject to payment of some or all of the costs at the discretion of the trial court. The court having exercised its discretion to impose costs on Appellant, we see no reason why he should not be made to pay those costs to DSSH. We will, however, examine each area of costs separately, since we detect some erroneous awards, bearing in mind that the award of costs and fees is discretionary with the trial court.

### 1. Deposition Costs

The rule in this jurisdiction is that the costs of the original of a deposition are recoverable by the deposing party where the deposition was necessarily obtained for use in the case. *Nani Koolau Co. v. K & M Construction, Inc.,* 5 Haw. App. 137, 681 P.2d 580 (1984); *Geldert v. State,* 3 Haw. App. 259, 649 P.2d 1165 (1982). *See* HRS § 624-35 (1976); Rule 54(d), HRCP (1972). Whether the depositions were necessarily obtained for use in the case is dependent on the trial court's factual evaluation of the course and progress of the proceeding and the nature of the evidence. *Nani Koolau,* 5 Haw. App. at 144, 681 P.2d at 586; *Geldert,* 3 Haw. App. at 269, 649 P.2d at 1172. As a general rule, deposition costs may be recovered by the prevailing party where the deposition has been received in evidence. 10 Wright, Miller & Kane, Federal Practice and Procedure: *Civil 2d* § 2676 (1983).

Although the record does not provide us with the rationale of the trial court's award of deposition costs, our examination of the

---

What may be included as "other costs of the action and pre-trial proceedings" is not indicated in the statute or in its legislative history. Neither does the annotation of the Uniform Parentage Act § 16 provide us with any guidance. Therefore, we will analogize HRS 584-16 to HRS ch. 607 (1976) since they are in *pari materia* and consider cases construing the latter statute to decide the issue of fees and costs.

Appellee argues that Appellant may not raise this issue on appeal because he did not object to the fees and costs below. We find, on review of the record, that Appellant's objections to fees and costs were sufficiently presented to the court below to allow him to raise the issue on appeal. *See* Rule 46, Hawaii Rules of Civil Procedure (HRCP) (1981). *Cf. Okuhara v. Broida,* 51 Haw. 253, 456 P.2d 228 (1969); *Lindemann v. Raynor,* 43 Haw. 299 (1959).

record convinces us that the court was correct. First, in accordance with the general rule, the depositions of Mr. Bastek, Dr. Paik and Dr. Terasaki were received in evidence. Second, it appears from the record that all of the depositions were necessarily obtained for use in the proceeding.

## 2. Transcripts

Appellant argues that there is no explanation why the cost of the transcript of the November 7, 1980 trial was incurred. Neither counsel has specifically indicated where the transcript was used. However, the transcript is of the testimony of the parties and the witness William Van Meter, all of whom testified on November 7, 1980, the first day of trial, and was prepared on December 10, 1981, obviously in preparation for the continuation of the proceedings on March 11 and 12, 1982. In view of the passage of time between the first and second days of trial, it was not unreasonable to have a transcript of the first day's testimony to assist court and counsel, and there was no abuse of discretion in allowing recovery of those costs.

## 3. Air Fare

### a. Attorney's Air Fare

In this jurisdiction expenses for transportation of an attorney are not allowed, *Smothers v. Renander*, 2 Haw. App. 400, 410, 633 P.2d 556, 564 (1981), and the lower court erred in allowing air fare for Appellee's attorney to take depositions.

### b. Out-of-State Witness' Air Fare

The recovery of out-of-state witness' traveling expenses as costs is discretionary with the trial court, *Turner v. Willis*, 59 Haw. 319, 582 P.2d 710 (1978), and the exercise of that discretion will not be reversed absent a showing of abuse. *Harkins v. Ikeda*, 57 Haw. 378, 557 P.2d 788 (1976). Appellant bears the burden of convincing this court from the record that the lower court abused its discretion. *See Campbell v. DePonte*, 57 Haw. 510, 512-13, 559 P.2d 739, 741

(1977); *Alt v. Krueger,* 4 Haw. App. 201, 206-07, 663 P.2d 1078, 1082 (1983).

In *Turner v. Willis, supra,* the supreme court considered the extent of the trial court's discretion in awarding as part of plaintiff's costs air fare and subsistence expenses for two expert witnesses brought from California to testify. Noting that in *Harkins v. Ikeda, supra,* the trial court was held not to have abused its discretion in denying such costs, the supreme court held that that discretion could also be exercised to award such costs.

Expressing its concern, however, that the indiscriminate award of travel expenses for out-of-state witnesses could discourage the bringing of meritorious actions, the supreme court set forth guidelines for the trial courts' exercise of discretion in awarding such costs. The supreme court held that the trial court should be informed prior to trial of the need for the testimony of the out-of-state witness. This would allow the court to determine the necessity for the testimony and the possibility of obtaining the testimony through other less expensive means.

Here, the trial court was in fact presented with that need prior to trial, and we find no abuse of discretion in ordering Appellant to reimburse DSSH for Dr. Mickey's air fare.

### 4. Expert Fees and Costs

#### a. Dr. Max R. Mickey and Dr. Paul Terasaki

HRS § 584-16 (1976) specifically provides that the reasonable fees of experts are taxable by the court. The reasonableness of expert witness fees is within the discretion of the trial judge, and the judge's ruling will not be disturbed on appeal except for an abuse of discretion. *See Alt v. Krueger, supra.*

The fee for Dr. Mickey is supported by a sufficiently itemized bill attached as an exhibit to the affidavit of Appellant's attorney and the amount of $1,569.62 does not appear to be excessive. *See Chemical Bank v. Kimmel,* 68 F.R.D. 67C (D. Del. 1975); *Thomas v. Delta S.S. Lines, Inc.,* 58 F.R.D. 335 (D. P.R. 1973).

Appellant has cited no authority to support his argument that Dr. Mickey is a government employee and consequently, may not

be entitled to expert fees, nor have we found any such authority. We assume there are none and find his argument without merit.

### b. Dr. Manas Ghosh

Appellant argues that it was an abuse of discretion to reimburse DSSH $800 for four hours of time set aside by Dr. Ghosh for his appearance as a witness herein since he was not called to testify. We agree.

In *Turner v. Willis, supra,* the supreme court held that the fees allowed under HRS § 607-12 (1976) may be paid to witnesses "attending and testifying," or "subpoenaed and attending," in any civil suit. In the instant case, Dr. Ghosh was neither "attending and testifying" nor "subpoenaed and attending."[12] Consequently, we hold that the award of the $800 reimbursement to DSSH was an abuse of discretion.

### 5. Miscellaneous Costs

In an obvious attempt to use the proverbial shotgun in his attack on the costs awarded by the trial court, Appellant contends that all of what he terms "Miscellaneous Costs" are disallowed by *Smothers.* We refuse to consider his argument. First, there is nothing in the record regarding "miscellaneous costs." Second, Appellant is required to quote a trial court's finding urged as error in its entirety. Rule 28(b)(4)(C), Hawaii Rules of Appellate Procedure (1984). We refuse to search the record in order to extract therefrom items of cost to which, in accordance with the rule, Appellant could have easily directed us. *Campbell v. De Ponte,* 57 Haw. 510, 512-13, 559 P.2d 739, 741 (1977).

### CONCLUSION

The record shows that the trial court erroneously awarded as costs the total sum of .$1,003.15 for transportation and per diem

---

[12] Query whether, if Dr. Ghosh had been subpoenaed, it would have been a proper exercise of discretion to have awarded his "standby" fee in these circumstances.

for Appellee's counsel and Dr. Ghosh's "standby time." We hereby modify the judgment for fees and costs by deducting that amount therefrom and enter judgment for DSSH for costs and fees in the amount of $3,894.68. In all other respects, the judgment is affirmed.

*Michael Matsukawa* (*Valta A. Cook* with him on the opening brief; *Cook, Choi, Quitiquit, Crudele & Matsukawa* of counsel) for respondent-appellant.

*Geraldine N. Hasegawa,* Deputy Corporation Counsel, County of Hawaii, for petitioner-appellee.