**NOT FOR PUBLICATION IN WEST'S HAWAII REPORTS OR THE PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000584
21-OCT-2022
07:46 AM
Dkt. 59 SO**

NOS. CAAP-21-0000584 & CAAP-21-0000585

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


NO. CAAP-21-0000584

IN THE INTEREST OF AQ
(FC-S NO. 19-039K)

AND

NO. CAAP-21-0000585

IN THE INTEREST OF Q CHILDREN
(FC-S NO. 18-016K)

APPEALS FROM THE FAMILY COURT OF THE THIRD CIRCUIT


SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, and Wadsworth and Chan, JJ.)

Appellant Mother (**Mother**) appeals from the Family Court of the Third Circuit's (**family court**) October 7, 2021 orders in FC-S No. 19-0039K and FC-S No. 18-0016K, both entitled "Findings of Fact; Conclusions of Law; Decision and Order Granting [Petitioner-Appellee] Department of Human Services' [(**DHS**)] Motion for Termination of Parental Rights [Filed November 2, 2020]" (collectively, **TPR Orders**).[1]

Mother contends that the family court erred in terminating her parental rights over her children, AQ1, AQ2, and

---

[1]     The Honorable Mahilani E.K. Hiatt presided over the consolidated hearing on DHS's respective motions to terminate parental rights, filed in the two underlying cases, and entered the TPR Orders.  On March 8, 2022, this court entered an order consolidating appellate case numbers CAAP-21-0000584 and CAAP-21-0000585 under CAAP-21-0000584.

AQ3 (collectively, **Children**),[2] where: (1) the family court focused on Mother's inability to comply with the substance abuse portion of her service plan, and did not fully consider other factors enumerated in Hawaii Revised Statutes (**HRS**) § 587A-7; (2) Mother's substance abuse constituted a disability under § 587A-7.5; and (3) there was insufficient evidence "that Mother was not presently willing and able to provide [the C]hildren . . . with a safe family home."

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error as follows, and affirm.

**I.**

Mother's first and third points of error overlap. She contends that in terminating her parental rights, the family court focused on her sobriety issues and failed to fully consider other factors enumerated in HRS § 587A-7.[3] Relatedly, Mother

---

[2] AQ2 and AQ3 are twins (collectively, **Twins**). The family court also terminated the parental rights of AQ1's father and the Twins' father, who do not appeal from the TPR Orders.

[3] HRS § 587A-7(a) (2018) provides, in relevant part:

(a) The following factors shall be fully considered when determining whether a child's family is willing and able to provide the child with a safe family home:

> (1) Facts relating to the child's current situation . . . [;]
>
> (2) The initial and any subsequent reports of harm and threatened harm to the child;
>
> (3) Dates and reasons for the child's out-of-home placement; description, appropriateness, and location of the placement; and who has placement responsibility;
>
> (4) Facts regarding the alleged perpetrators of harm to the child, the child's parents, and other family members who are parties to the court proceedings . . . [;]
>
> (5) Results of psychiatric, psychological, or developmental evaluations of the child, the alleged perpetrators, and other family members who are parties;
>
> (6) Whether there is a history of abusive or
>
> (continued...)

argues there was insufficient evidence to support the family court's conclusion that Mother was not presently willing and able to provide the Children with a safe family home.

HRS § 587A-33(a) (2018) governs the termination of parental rights.  It provides in relevant part:

> (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> > (1)   A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;
> >
> > (2)   It is not reasonably foreseeable that the child's parent whose rights are subject to

---

3/   (...continued)

> > assaultive conduct by the child's family members and others who have access to the family home;
> >
> > (7)   Whether there is a history of substance abuse by the child's family or others who have access to the family home;
> >
> > (8)   Whether any alleged perpetrator has completed services in relation to any history identified in paragraphs (6) and (7), and acknowledged and accepted responsibility for the harm to the child;
> >
> > (9)   Whether any non-perpetrator who resides in the family home has demonstrated an ability to protect the child from further harm and to ensure that any current protective orders are enforced;
> >
> > (10)  Whether there is a support system available to the child's family, including adoptive and hanai relatives, friends, and faith-based or other community networks;
> >
> > (11)  Attempts to locate and involve extended family, friends, and faith-based or other community networks;
> >
> > (12)  Whether the child's family has demonstrated an understanding of and involvement in services that have been recommended by the department or court-ordered as necessary to provide a safe family home for the child;
> >
> > (13)  Whether the child's family has resolved identified safety issues in the family home within a reasonable period of time; and
> >
> > (14)  The department's assessment, which shall include the demonstrated ability of the child's family to provide a safe family home for the child, and recommendations.

> termination will become willing and able to
> provide the child with a safe family home, even
> with the assistance of a service plan, within a
> reasonable period of time, which shall not
> exceed two years from the child's date of entry
> into foster care;
>
> (3)    The proposed permanent plan is in the best
>        interests of the child. . . .
>
>        . . . .
>
> (4)    The child consents to the permanent plan if the
>        child is at least fourteen years old . . . .

"Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion."  In re Doe, 95 Hawaiʻi 183, 189, 20 P.3d 616, 622 (2001) (internal quotation marks omitted) (quoting In re Doe, 84 Hawaiʻi 41, 46, 928 P.2d 883, 888 (1996)).

> [T]he family court's determinations . . . with respect to
> (1) whether a child's parent is willing and able to provide
> a safe family home for the child and (2) whether it is
> reasonably foreseeable that a child's parent will become
> willing and able to provide a safe family home within a
> reasonable period of time present mixed questions of law and
> fact; . . . they are reviewed on appeal under the "clearly
> erroneous" standard.  Likewise, the family court's
> determination of what is or is not in a child's best
> interests is reviewed on appeal for clear error.

Id. at 190, 20 P.3d at 623 (citations omitted).

Here, the family court entered extensive findings of fact (**FOFs**) in FC-S No. 19-0039K (**AQ1 Case**) and FC-S No. 18-0016K (**Twins Case**) related to Mother's willingness and ability to provide the Children a safe family home.  The FOFs describe, among other things, Mother's history of substance abuse; her failure to recognize the problem and its impact on her functioning as a parent; her failure to participate in and complete substance abuse treatment and 12-step program meetings; her history of positive urinalysis tests for marijuana, methamphetamine, and fentanyl; her pattern of missed appointments, missed court dates and discharge from treatment services due to non-compliance; her failure to return phone calls from, and maintain consistent contact with, DHS; the impact of her substance abuse on the Children; the testimony of DHS Social Worker Nancy Radtke (**Radtke**) that, among other things, Mother is

4

not presently willing and able to provide the Children with a safe family home; and the testimony of Radtke and Guardian ad Litem Carol Kitaoka that, among other things, the proposed permanent plan is in the best interest of the Children. Because Mother does not challenge any of the family court's FOFs, they are binding on the parties and this court. <u>See</u> <u>In re Doe</u>, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002) (citing <u>Poe v. Hawaii Labor Rels. Bd.</u>, 97 Hawaiʻi 528, 536, 40 P.3d 930, 938 (2002)).

Based on the entire record in each case, including the uncontested FOFs and the testimony presented at trial, we conclude that the family court did not clearly err in determining there was clear and convincing evidence that Mother was not presently willing and able to provide the Children with a safe family home, even with the assistance of a service plan. In making that determination, the family court was required to consider the safe family home factors set forth in HRS § 587A-7(a), including "[w]hether there is a history of substance abuse by the child's family." HRS § 587A-7(a)(7). It appears the family court did so.[4/] The court was not required to recite the enumerated factors in its findings; it was "required to only make brief, definite, pertinent findings and conclusions upon the contested matters[.]" <u>In re AS</u>, No. CAAP-21-0000352, 2022 WL 223286, at *2 (Haw. App. Jan. 26, 2022) (internal quotation marks omitted) (quoting <u>Doe v. Roe</u>, 5 Haw. App. 558, 565, 705 P.2d 535, 542 (1985)).

In that regard, Mother's history of substance abuse and its affect on her parenting were plainly relevant factors in determining whether she was willing and able to provide the Children with a safe family home. Mother cites no authority, and

---

[4/] The family court's FOFs in each case relate to various HRS § 587A-7(a) factors, including: the initial and any subsequent reports of harm and threatened harm to the Children (HRS § 587A-7(a)(2)); the results of Mother's psychological evaluation (HRS § 587A-7(a)(5)); whether Mother completed services in relation to her substance abuse history and accepted responsibility for harm to the Children (HRS § 587A-7(a)(8)); whether Mother demonstrated an understanding of and involvement in services that were recommended by DHS or court-ordered as necessary to provide the Children with a safe family home (HRS § 587A-7(a)(12)); whether Mother resolved identified safety issues in the family home within a reasonable period of time (HRS § 587A-7(a)(13)); and DHS's assessment, including Mother's demonstrated ability to provide the Children with a safe family home, and recommendations (HRS § 587A-7(a)(14)).

we have found none, suggesting that in making that determination, the family court could not consider that "Mother's sobriety is, and has been, the main issue that has prevented reunification with the Child[ren]."

Further, the record in each case refutes Mother's claim that the family court terminated her parental rights based solely on her sobriety issues, without evidence connecting those issues to her ability to provide a safe family home. For example:

- In the Twins Case, the family court referred to a February 22, 2018 Safe Family Home Report that described "concerns of domestic violence, sex abuse, substance abuse and inappropriate parenting."

- In the AQ1 Case, the family court referred to a July 18, 2019 Safe Family Home Report describing "ongoing safety concerns of marijuana and methamphetamine use, missed appointments, missed classes, discharge from services, and failure to return calls or contact the Child Welfare Services office." (Emphasis added.)

- In each case, the family court referred to the July 26, 2018 psychological evaluation stating that it "is critical that [Mother] actively participates in a formal Substance Abuse treatment problem [sic] with aftercare and relapse prevention services to ensure that she will not relapse and continue inappropriate care of her children. (Emphasis added.)

- In each case, the court found that Mother was hard to reach, often failed to answer calls or texts, kept changing her phone or phone numbers, and had difficulty maintaining consistent contact and communication with the assigned DHS social worker.

- In the AQ1 case, the family court described the impact of Mother's behavior on AQ1 and concluded that AQ1, who was then sixteen, consented to the permanent plan of permanent custody and adoption when an adoptive home could be identified.

- In the Twins case, the family court found that Mother was unable to advance to a higher level of unsupervised visits and continued to discuss inappropriate topics with the Twins.

In sum, the family court did not clearly err in determining there was clear and convincing evidence that Mother was not presently willing and able to provide the Children with a safe family home, even with the assistance of a service plan.

## II.

In her second point of error, Mother contends that her "substance abuse status" constitutes a disability under HRS § 587A-7.5[5] and that her parental rights could not be terminated on that basis. She fails, however, to state "where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the [family] court . . . ." Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4)(iii). Based on our review of the record in each case, it appears that Mother never argued in the family court that her substance abuse issues constituted a "disability" under HRS § 587A-7.5 (or any other law) or otherwise invoked that section's provisions. Mother's argument is therefore deemed waived. See SC v. JC, 151 Hawaiʻi 153, 165, 509 P.3d 1116, 1128 (App. 2022) ("As a general rule, if a party does not raise an argument at trial, that argument will be deemed to have been waived on appeal[.]") (quoting Cnty. of Hawaii v. C & J Coupe Family Ltd., 119 Hawaiʻi 352, 373, 198 P.3d 615, 636 (2008)).

---

[5] HRS § 587A-7.5 (Supp. 2021) provides:

The court shall not consider the disability of a parent or caregiver to be the sole factor in the court's determination made pursuant to this part. If the court makes a determination that a child's family is unable to provide a safe family home and one or more of the child's parents or caregivers are disabled, the court shall make specific written findings stating the basis for this determination. The party attempting to demonstrate that the disability of a parent or caregiver impairs the parent's or caregiver's ability to parent must prove that the disability is a factor, and demonstrate a clear nexus between the disability and the alleged parental deficiency.

**III.**

For the reasons discussed above, we affirm the Family Court of the Third Circuit's October 7, 2021 orders in FC-S No. 19-0039K and FC-S No. 18-0016K, both entitled "Findings of Fact; Conclusions of Law; Decision and Order Granting Department of Human Services' Motion for Termination of Parental Rights [Filed November 2, 2020]."

DATED:  Honolulu, Hawaiʻi, October 21, 2022.


On the briefs:

Matthew A. Sylva
(Akamai Law, LLLC)
for Mother-Appellant.

Abigail S. Dunn Apana and
Julio C. Herrera,
Deputy Attorneys General,
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Derrick H.M. Chan
Associate Judge