OFFICE OF DISCIPLINARY COUNSEL, Petitioner, *v.* WALLACE KLEIN, Respondent

NO. 7212

NOVEMBER 27, 1979

RICHARDSON, C.J., OGATA, MENOR, JJ., RETIRED JUSTICE MARUMOTO AND CIRCUIT JUDGE LUM, ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* The Disciplinary Board of the Hawaii Supreme Court has submitted to this court its report and recommendation that Respondent Klein be disbarred. The record shows that, after due notice, Respondent did not file a formal answer to the Board's original petition for discipline, Supreme Court Rule 16.7(b), did not file exceptions to the Board's report and recommendation, Rule 16.7(c), and did not file an opening brief in this court, *id.* However Respondent appeared and testifed at a disciplinary hearing below, and his attorney appeared on his behalf at a subseqüent hearing. By Respondent's failure to answer the petition for discipline, the charges in the petition "shall be deemed admitted." Supreme Court Rule 16.7(b); *Office of Disciplinary Counsel v. DeMello*, 61 Haw. 223, 601 P.2d 1087 (1979). In addition Respondent has expressly admitted most of the fac-

tual allegations against him. In fact, Respondent came forward to the Office of Disciplinary Counsel and confessed most of his acts of misconduct not long after the misconduct had been consummated. He also submitted a written report to the Office of Disciplinary Counsel. Respondent was found by the hearing committee to have been "candid and forthright concerning these matters". Not long before the issuance of this opinion, when Respondent's opening brief had been in default for several months, Respondent submitted to this court a letter wherein Respondent contested some of the conclusions reached by the Disciplinary Board's hearing committee. The letter was clearly untimely. However, we need not decide whether the letter's untimeliness requires total disregard of it by this court. The letter does not contest the crucial acts of misconduct in this case.

This court finds that Respondent has violated the Hawaii Code of Professional Responsibility in two matters involving the funds of clients undergoing bankruptcy. In the first case, under considerable pressure from the bankrupt client, including the client's eventual threats of suicide, when Respondent was himself subjected to substantial personal financial pressures, Respondent assisted in the disbursement of over \$80,000 to the bankrupt without the permission of the bankruptcy court, and Respondent disbursed approximately \$22,000 to himself as attorney's fees.[1] Respondent testified that originally he was confident that the bankrupt's creditors would not actually be harmed. The hearing committee found that, after a certain point, Respondent "continued to obtain disbursements knowing that as a result there would be insufficient funds for [the bankrupt's] creditors." Respondent denies that he ever knew that the creditors would be harmed.

---

[1] Of course such unapproved disbursements after the filing of the petition for bankruptcy amounted to improper diminution of the bankrupt's assets where, as here, the disbursements were to be expended by the bankrupt and by Respondent rather than being preserved in trust for the bankrupt's creditors. Respondent admitted to the Disciplinary Board's hearing committee that "I knew I was breaking the rules."

The disbursements to the bankrupt were being expended primarily on a Waikiki entertainment venture. Respondent asserts that, even as the bankrupt's assets were being consumed by the Waikiki venture, he remained hopeful that the bankrupt would find the money to pay her creditors. In fact the Waikiki venture failed. Respondent knew that the unapproved expenditures violated the rules of the bankruptcy court, and Respondent ought to have known that such expenditures entailed a substantial risk of harm to the bankrupt's creditors. Respondent's disbursements after a certain date were also in direct and knowing violation of an interim bankruptcy court order which had specifically authorized Respondent to disburse certain sale proceeds "subject to [prior] approval of the court''. Moreover, it was found by the hearing committee that Respondent had procured this order through deliberate deceit in the sense that Respondent failed to inform the bankruptcy court of the material fact that he already had disbursed some $60,000 without the court's knowledge. Respondent has further admitted that, at the time he procured the order, he did not intend to abide by the condition of prior court approval of disbursements. Respondent has admitted that, beginning with the date that the bankruptcy court order was signed, "I deliberately, in effect, defrauded the court, but I did so, because, at that point, I had simply elected to not take the chance that my client was going to take her life . . . .'' However, Respondent further admitted the probability that his deception and disobedience of the bankruptcy court were not solely motivated by concern for his client, but were also likely affected by (1) his reluctance to divulge to the court the fact that he had already violated its rules, and (2) his own financial problems, including his investment of a large number of hours in his client's case. Respondent's disbursements to himself prove that he was not concerned solely about the welfare of his client. The hearing committee concluded: "While the committee can somewhat understand Respondent's predicament, we cannot condone or excuse his conduct.'' This court finds that, by Respondent's actions and omissions in this case he seriously violated several provisions of the Hawaii Code of Professional Responsibility, including

at the very least the following three Disciplinary Rules: DR1-102(A)(4), which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; DR7-106(A), which prohibits an attorney from disregarding a ruling of a tribunal made in the course of a proceeding; and DR 1-102(A)(5), which prohibits an attorney from engaging in conduct prejudicial to the administration of justice — in this case, the administration of the bankruptcy laws by the bankruptcy court. *Cf. In re Corey*, 55 Haw. 47, 50, 515 P.2d 400, 402 (1973) (attorney suspended for six months because of misrepresentation to mortgagee savings and loan association "by direct actions and also be way of acquiescence through silence"); *In re French*, 28 Haw. 47 (1924) (attorney disbarred because of misrepresentations to district magistrate in a collusive lawsuit which had been brought by the attorney against his client to deter the client's true creditor).

In the second bankruptcy case, Respondent was found to have disbursed some $10,000 of a bankrupt's estate without the knowledge or approval of the bankruptcy court, of which amount approximately $5,600 was disbursed to the bankrupt, about $3,000 was disbursed to Respondent as attorney's fees, and about $1,400 was disbursed to mainland co-counsel. Although the hearing committee noted that the $5,600 disbursement to the bankrupt may have been justified on the ground of being "reasonable living expenses", and although Respondent testified to his belief that the amounts of all the disbursements would have been approved by the bankruptcy court if properly presented to the court, Respondent conceded that, due to major office administrative problems and partly influenced by alleged prior instances of laxity by the bankruptcy court in enforcing its rules, he failed to complete the "formality" of reporting the disbursements for court approval. Respondent's letter to this court alleges for the first time that Respondent had expected a California attorney to report the disbursements on Respondent's behalf. Although Respondent's misconduct in this second bankruptcy case was obviously much less serious than the misconduct in the first case, we note that by his actions and omissions, Respon-

dent engaged in conduct prejudicial to the administration of justice, in violation of Disciplinary Rule DR 1-102(A)(5).

It is hereby ordered, based on the totality of the misconduct summarized above, that Respondent be suspended from the practice of law for a period of five years — the maximum period of suspension under our rules — commencing from April 27, 1979, the date on which this court issued an interim order temporarily suspending Respondent's license.

*Daniel G. Heely,* Chief Disciplinary Counsel, Office of Disciplinary Counsel, for the motion.