OFFICE OF DISCIPLINARY COUNSEL, Petitioner, *v.* EDWIN W. SMITH, Respondent

NO. 7790

SEPTEMBER 10, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

*Per Curiam.* On August 7, 1980, this court issued an order disbarring respondent Edwin W. Smith. The Order of Disbarment stated that a written opinion would follow. This opinion is in accordance with that order.

The Office of Disciplinary Counsel of the Hawaii Supreme Court instituted disciplinary proceedings against respondent,

who was licensed to practice law in Hawaii in October 1971. Respondent, acting pro se, filed answers to the seven complaints against him and participated in the disciplinary board hearing conducted pursuant to the rules of this court, *see* R. Haw. Sup. Ct. 16.7. The record shows, however, that respondent did not file exceptions to the board's report and recommendation for disbarment, which adopted the hearing committee's findings of fact and conclusions of law. Respondent also failed to file an opening brief in this court, as provided by the rules, *id.* 16.7(c).

Based upon the hearing committee's uncontested findings of fact and conclusions of law, the court finds compelling grounds for disbarment of respondent. Protection of the public, maintenance of the trust and confidence reposed in lawyers by their clients, and preservation of the integrity of the judicial process require this action. Specifically, the record shows that respondent in one case misappropriated client funds to his own purposes. In another case, respondent falsely represented that he was the executor of his deceased client's estate, opened fictitious bank accounts to receive funds from the estate's debtors, misappropriated certain of those funds for his own use, and withheld material information from the probate court in an attempt to deceive the court. Each of these factual situations will be discussed in detail.

I.

In 1975, Marilyn Wells retained respondent to represent her in a personal injury claim resulting from an automobile accident. Both agreed that respondent would receive 25% of the total monies recovered. As a result, respondent did receive approximately one-fourth of the monthly no-fault benefits paid to his client from her own insurance carrier. That same year, respondent agreed to represent Ms. Wells in an employment dispute related to the injuries she had sustained in the auto accident. Respondent did not bill his client for the additional work, and the record contains nothing to support respondent's contention that he established a fee arrangement separate from the original 25% contingency fee.

The following year, respondent agreed, at no charge to his client, to handle her personal financial matters while she attended Ohio State University. Ms. Wells executed a Power of Attorney which respondent used to open a savings account in his name as trustee for his client, who subsequently deposited $7,500 into the account before leaving Hawaii. Within a few months, respondent converted approximately $3,900 of the savings account to his own use and benefit without the knowledge or consent of his client. During the same period, respondent failed to execute his client's instructions to make timely payments from the trust account to the client's creditors. Ms. Wells became aware of respondent's negligence and made several, partially successful efforts to ensure that respondent would pay the delinquent bills.

Upon returning to Hawaii and discovering the depleted savings account balance, Ms. Wells hired another attorney who demanded an accounting from respondent. Respondent failed to comply and did not return the misappropriated funds until his client commenced a civil action against him. The suit was settled when respondent agreed to pay $12,000, which he contends was to avoid adverse publicity resulting from the litigation.

This court consistently has held that misappropriation of client funds will result in disbarment absent strong mitigating circumstances. *E.g., Office of Disciplinary Counsel v. Johnson,* 62 Haw. 95, 611 P.2d 993 (1980); *Office of Disciplinary Counsel v. DeMello,* 61 Haw. 223, 601 P.2d 1087 (1979); *In re Mahoe,* 3 Haw. 255 (1871). The reasons therefor were succinctly stated in *Disciplinary Board v. Kim,* 59 Haw. 449, 453, 583 P.2d 333, 336 (1978) (citations omitted):

> The funds of a client or others held by an attorney must be kept inviolate and only the strictest rules of conduct will be applicable. . . . The attorney-client relationship involves the highest degree of trust and confidence. The duty of an attorney to the client must be discharged honorably and faithfully, governed by the most exacting principles of morality and justice. . . . Thus, in numerous cases, both in this jurisdiction and in

others, the misappropriation of the funds of a client by an attorney has resulted in the immediate disbarment of the culpable attorney.

By his actions, respondent has violated the Hawaii Code of Professional Responsibility[1] and transgressed one of the clearest and most important rules of professional conduct established by this court. The fact that respondent made restitution to his client only after legal action was taken to recover the funds does not weigh in his favor. *Cf. id.* at 454, 583 P.2d at 337 (restitution after disciplinary complaint was filed does not mitigate against disbarment). It is therefore our duty to prohibit respondent from engaging in the practice of law in this jurisdiction.

## II.

In 1975, Richard Spurrier as seller executed a DROA for the sale of certain real estate requiring, *inter alia,* that the purchasers pay approximately $275 per month toward the balance after downpayment. Later that year, Mr. Spurrier died. Having been informed that the respondent had represented Mr. Spurrier in the real estate matter, the buyers contacted respondent to inquire as to the future manner of payment. Respondent falsely represented that he had been appointed the personal representative for the estate and directed the purchasers to make monthly payments to him. Toward this end, respondent opened two bank accounts under his name as executor of the Spurrier estate. More than $7,000 was paid into these checking and savings accounts pursuant to the DROA.

On September 8, 1977, respondent commenced probate proceedings on behalf of the decedent. By that time, respondent had converted approximately $2,800 of the estate assets

---

[1] *See* R. Haw. Sup. Ct. Exhibit A, DR 1-102(A)(4) ("Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."); DR 6-101(A)(3) ("Neglect a legal matter entrusted to him."); DR 9-102(B)(3)-(4) (maintain complete records, render an accounting, and promptly deliver client's property to client upon request). The Hawaii Code of Professional Responsibility governs the conduct of attorneys by operation of Rule 16.2 of the rules of this court.

from the bank accounts to his own use and benefit. Shortly thereafter, he deposited more than one thousand dollars of additional estate funds into his personal or law office accounts. Moreover, respondent disbursed approximately $3,700 to one heir without court approval.

After filing the initial petition in probate court, respondent neglected his specific duties regarding the DROA, ultimately provoking a court order mandating respondent to execute the property sale. In addition, respondent knew or should have known that the subject parcel was encumbered by a mortgage requiring monthly payments, but he did not use the funds accrued to the Spurrier estate for that purpose. As a result, between two and three thousand dollars in delinquent interest penalties accumulated and correspondingly reduced the proceeds available for distribution to the Spurrier heirs.

In partial explanation of the delay surrounding respondent's handling of the property sale, respondent represented to the disciplinary counsel that the estate had no cash. Even if this were true, it would not explain respondent's pattern of negligence manifested by his unavailability to the buyers[2] and inattention to considerations arising from the outstanding mortgage. Indeed, respondent's assertion was not true; the estate had received monthly purchase payments totalling in excess of $7,000. Respondent's misrepresentations to the buyers in the property matter cannot be condoned. Moreover, by opening fictitious bank accounts and disbursing estate assets without court approval, respondent committed a fraud upon the probate court and the Spurrier estate in violation of the Hawaii Code of Professional Responsibility.[3] This con-

---

[2] After several unsuccessful attempts to reach respondent, the buyers ceased making monthly payments to him in February 1978 and deposited the money in a separate account to be transferred to the estate. In 1979, the purchasers sought and were granted the court order requiring respondent to execute an agreement of sale.

[3] See R. Haw. Sup. Ct. Exhibit A, DR 1-102(A)(4)-(5) (engage in dishonest or fraudulent conduct or conduct "prejudicial to the administration of justice"); DR 7-102(A)(3) ("Conceal or knowingly fail to disclose that which he is required by law to reveal."). See note 1 supra.

duct, by itself, would call for some kind of disciplinary action,[4] but we do not reach the issue. Our decision to disbar respondent rests on his misappropriation of estate funds.

This court recently had occasion to consider the proper disciplinary action where an attorney deliberately deceived the bankruptcy court by disbursing funds without court approval both to himself as attorney's fees and to his potentially suicidal bankrupt client. *Office of Disciplinary Counsel v. Klein,* 61 Haw. 334, 603 P.2d 562 (1979) (maximum five-year suspension from practice of law). *See also In re Corey,* 55 Haw. 47, 515 P.2d 400 (1973) (six months' suspension result-

---

[4] Actions taken in other jurisdictions have ranged from public reprimands to disbarment, depending upon the seriousness of the deceptive conduct and whether it also involved misappropriation of funds. *See, e.g., In re* Troy, 505 F.2d 746 (1st Cir. 1974), *cert. denied,* 420 U.S. 982 (1975) (disbarring judge who purposely misled court in testimony and false answers to interrogatories and by altering court records); Snyder v. State Bar, 18 Cal. 3d 286, 555 P.2d 1104, 133 Cal. Rptr. 864 (1976) (disbarring attorney who filed false allegation that client was creditor in involuntary bankruptcy petition and who perpetrated several other frauds upon the court); Sullins v. State Bar, 15 Cal. 3d 609, 542 P.2d 631, 125 Cal. Rptr. 471 (1975), *cert. denied,* 425 U.S. 937 (1976) (public reprimand for deliberately misleading the court by failure to disclose material information regarding petition for approval of contingency fee); Barreiro v. State Bar, 2 Cal. 3d 912, 471 P.2d 992, 88 Cal. Rptr. 192 (1970) (public reprimand for failure to disclose to court that client had assets in obtaining order requiring client's estranged husband to pay attorney's fee and for falsely testifying on same matter before disciplinary committee); Reznik v. State Bar, 1 Cal. 3d 198, 460 P.2d 969, 81 Cal. Rptr. 769 (1969) (1-year suspension and 3-years' probation for altering check with purpose of deceiving court in personal suit against another); People v. Radinsky, 176 Colo. 357, 490 P.2d 951 (1971) (indefinite suspension for filing misleading documents and for jury tampering); Florida Bar v. Lewin, 342 So. 2d 513 (Fla. 1977) (disbarment for filing false receipt with probate court to obtain discharge as personal representative of the estate and for making investments without court approval or consent of beneficiaries); Committee on Professional Ethics & Conduct v. Kinion, 206 N.W.2d 726 (Iowa 1973) (disbarment for endorsing clients' checks to own account and filing affidavit regarding attorney's fees representing that clients were indigent); *In re* Starr, 538 S.W.2d 334 (Mo. 1976) (disbarring attorney acting as executor and attorney for estate for deceiving probate court by failing to divulge fees received without court approval, failing to report estate transactions, and not expending funds consistent with representations to the court); State v. Bremers, 200 Neb. 481, 264 N.W.2d 194 (1978) (disbarring attorney for estate for failure to file accounting and for disbursal of funds without court approval); State v. Ledwith, 197 Neb. 572, 250 N.W.2d 230 (1977) (disbarment for withholding information from probate court and misappropriating trust funds to self); *In re* Greene, 34 App. Div. 2d 64, 309 N.Y.S.2d 98 (1970) (disbarment for conversion of escrow funds to own use and false representation to disciplinary committee that escrow account was intact).

ing from misrepresentation in loan application involving attorney's personal business transaction); *In re Achi*, 10 Haw. 7 (1895) (disbarment for financial fraud of client). The circumstances of each case may provide mitigating factors. We are aware that the desire to accommodate the immediate needs of survivors following a family death may create unusual pressures for the attorney, however, we must look askance at the actions of respondent who appeared motivated by his own financial needs rather than those of his clients.

Nothing more need be added to the prior discussion regarding misappropriation of funds. Suffice it to say that respondent's ability to repay the Spurrier estate, a proposition which is somewhat in doubt, is not a defense to his original misdeeds. Respondent's violation of the most basic rule of professional responsibility to safeguard client funds[5] requires the severest disciplinary sanction. For the reasons stated herein, this court has issued its Order of Disbarment terminating respondent's practice of law in Hawaii.

*Daniel G. Heely*, Chief Disciplinary Counsel, and *Gerald H. Kibe*, Assistant Disciplinary Counsel, for petitioner on the motion.

---

[5] R. Haw. Sup. Ct. Exhibit A, DR 9-102(A)-(B) (misappropriation of funds).