941 P.2d 295

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Collin K.C. LAU, Respondent.**

**No. 18459.**

Supreme Court of Hawai'i.

June 4, 1997.

Carole R. Richelieu, Chief Disciplinary Counsel, on the briefs, Honolulu, for petitioner Office of Disciplinary Counsel.

Collin K.C. Lau, Honolulu, respondent pro se.

Before MOON, C.J., KLEIN, LEVINSON and RAMIL, JJ., and KOCHI, Circuit Judge, in place of NAKAYAMA, J., Recused.

PER CURIAM.

The Disciplinary Board has submitted a report and recommendation (1) to suspend the respondent Collin K.C. Lau from the practice of law for a period of five years and (2) to require him successfully to complete the Multistate Professional Responsibility Examination before he can be reinstated.

We accept the stipulated facts and stipulated rules violation, but will enter an order of disbarment for the reasons stated herein.

## I. BACKGROUND

In October 1994, the Disciplinary Board submitted a report recommending that Lau be publicly censured upon eight ethics matters that included neglect of clients, failure to file timely pleadings, failure to communicate with clients, and failure to comply with court rules and orders.[1] While the October 1994 report and recommendation were pending, Lau agreed to represent Ernest Tsugawa, a defendant in a Family Court matter. On December 8, 1994, after due consideration of the facts and the rules, we suspended Lau from the practice of law for sixty days, effective January 7, 1995.

On January 17, 1995, during the period of suspension, Lau appeared before the Hawai'i Paroling Authority on behalf of a client, Jer-

---

1. Lau and the Office of Disciplinary Counsel stipulated to violations of Disciplinary Rules 6–101(A)(3) (neglect of an entrusted legal matter), 9–102(B)(4) (failure to promptly deliver to a client property to which the client is entitled), 1–102(A)(4) (conduct involving fraud, dishonesty, deceit, or misrepresentation), 1–102(A)(5) (conduct prejudicial to the administration of justice), 1–102(A)(6) (conduct adversely reflecting on fitness to practice law), 7–101(A)(1) (failure to seek the lawful objective of a client), 7–101(A)(2) (fail-

ure to carry out a contract of employment), 2–110(B)(4) (failure to promptly withdraw), and to violations of the following Hawai'i Rules of Professional Conduct (HRPC): HRPC 1.4(a) (failure to keep a client reasonably informed); HRPC 1.15(b)(4) (failure to promptly deliver to a client property to which the client is entitled); HRPC 1.16(a)(3) (failure to properly withdraw); HRPC 1.3 (lack of diligence); HRPC 3.2 (failure to make reasonable efforts to expedite litigation); and HRPC 8.4(d) (failure to cooperate).

ry Alameida. When Lau sought reinstatement, the Office of Disciplinary Counsel (ODC) objected on the grounds that Lau had not complied with our December 8, 1996 suspension order and had further failed to timely file a Rule 2.16(d) affidavit.[2] On March 28, 1995, we stayed reinstatement pending disciplinary proceedings upon the charge that Lau practiced law while suspended.[3]

Sometime after March 23, 1995, but before entry of a reinstatement order, Lau agreed again to represent Tsugawa, for $2,000, in an assault case in district court. On April 5, 1995, Tsugawa paid $1,000 to Lau. Lau deposited the unearned fee into his personal account.

On April 19, 1995, Lau and the ODC stipulated to facts and proposed a public censure for Lau's representation of Alameida during the period of Lau's suspension. The Disciplinary Board recommended a 120-day suspension.

On July 7, 1995, again before a reinstatement order was entered, Tsugawa paid Lau another $500. Lau cashed the check and spent the unearned fee on matters unrelated to Tsugawa's case. On July 10, 1995, Lau appeared in 'Ewa District Court on Tsugawa's behalf in the assault case. Lau sought a continuance due to his "unavailability."

On July 25, 1995, we filed an opinion and order suspending Lau for 120 days, effective March 7, 1995. The suspension was entered due to Lau's representation of Alameida before the Hawai'i Paroling Authority during Lau's first suspension, in violation of Hawai'i Rules of Professional Conduct (HRPC) Rule 3.4(e) (disobeying an obligation under the rules of a tribunal). *See Office of Disciplinary Counsel v. Lau,* 79 Hawai'i 201, 900 P.2d 777 (1995).

On July 27, 1995, Lau filed an RSCH 2.16(d) affidavit stating that he had complied with our July 25, 1995 suspension order and had not practiced law since March 7, 1995.

On August 8, 1995, again before entry of a reinstatement order, Lau prepared and signed, as Tsugawa's attorney, a motion to continue the district court case. Lau indicated that he could not appear on the scheduled date. On August 28, 1995, still without an order of reinstatement, Lau appeared in the 'Ewa district court as counsel for Tsugawa, but noted that he was not yet reinstated. On the same day, a witness in the Tsugawa assault case filed a complaint with the ODC. The witness noted that he and other witnesses were inconvenienced and had missed work because Lau had repeatedly continued the district court case. The complaining witness' letter was Disciplinary Counsel's first inkling that Lau had represented Tsugawa during the period of Lau's suspension. The ODC objected to Lau's reinstatement.

On October 3, 1995, we denied Lau's reinstatement, pending resolution of further disciplinary proceedings on allegations that Lau had again practiced law while suspended. We enjoined Lau from practicing until further order of this court.

In the further disciplinary proceeding, the ODC and Lau entered into the stipulation of facts and proposed discipline that are the subject of the current proceeding. The stipulation concluded in relevant part:

> 42. [Lau's] failure to abide by the Supreme Court of Hawai'i's July 25, 1995 Order of Suspension and RSCH 2.17(a) is violative of HRPC 3.4(e) (disobeying an obligation under the rules of a tribunal) of the Hawai'i Rules of Professional Conduct.

**2.** Rule 2.16(d) of the Rules of the Supreme Court of Hawai'i (RSCH) provides:

> Within ten days after the effective date of the disbarment or suspension order, the disbarred or suspended attorney shall file with this court an affidavit showing: (1) that he or she has fully complied with the provisions of the order and with these rules; (2) all other state, federal and administrative jurisdictions to which he or she is admitted to practice; and (3) that he or she has served a copy of such affidavit upon [Disciplin-

ary] Counsel. Such affidavit shall also set forth the residence or other address of the disbarred or suspended attorney where communications may thereafter be directed to him or her.

**3.** RSCH 2.17(a) provides that "[n]o suspended or disbarred attorney may resume practice until reinstated by order of this court except as provided in Rule 17(d)." Rule 17(d)(4) allows the Clerk to reinstate attorneys who have been suspended for nonpayment of registration fees.

43. [Lau's] failure to deposit Tsugawa's funds intact into a designated client trust account and his failure to maintain the funds in trust until earned is violative of HRPC 1.15(d) (handling of trust funds) of the Hawai'i Rules of Professional Conduct.

44. [Lau's] conversion of Tsugawa's funds to his own use and benefit is violative of HRPC 1.15(c) (commingling and conversion), HRPC 8.4(b) (criminal act which reflects adversely on a lawyer's honesty, trustworthiness, or fitness), and HRPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) of the Hawai'i Rules of Professional conduct.

The stipulation acknowledged several factors in aggravation, including four informal admonitions and the prior public disciplines noted above. In mitigation, the stipulation noted that Lau had not acted with a dishonest or selfish motive, had exhibited a cooperative attitude toward these proceedings, had expressed remorse for his conduct, and had refunded $1,500 to Tsugawa. The ODC and Lau stipulated that any reinstatement would be conditioned upon Lau's successful completion of the Multistate Professional Responsibility Examination at his expense and acknowledged that the stipulation was not necessarily binding upon the Disciplinary Board or this court. The stipulation proposed that Lau be suspended from practice for two years, retroactive to July 6, 1995, and that his reinstatement be conditioned upon successful completion of the Multistate Professional Responsibility Examination, taken at his expense.

The Disciplinary Board accepted the stipulations of fact and the conclusions regarding rules violations, but modified the recommended discipline, "in light of the seriousness of Lau's ethical misconduct," to a non-retroactive five-year suspension from the practice of law, with reinstatement conditioned upon successful completion of the Multistate Professional Responsibility Examination, taken at Lau's expense.

## II. *LAU'S CONTENTION*

Lau contends that the Disciplinary Board erred when it recommended that he be suspended for five years, in derrogation of the stipulated proposal for discipline.

## III. *PARTIES' ARGUMENTS*

Lau asserts that the circumstances of this case justify the lesser, stipulated period of suspension. He asserts that the two-year suspension agreed to, along with the requirement that he retake the ethics portion of the bar examination, would sufficiently protect the court and public. Lau says that he is deeply embarrassed that his actions have brought dishonor upon the legal profession and his family, and he pledges to be a conscientious practitioner when he is reinstated.

The ODC argues that Lau's legal practice while suspended and conversion of client funds warrant the five-year suspension recommended by the Disciplinary Board.

## IV. *DISCUSSION*

As the ultimate trier of both fact and law in cases involving the discipline of attorneys, *Office of Disciplinary Counsel v. Kagawa*, 63 Haw. 150, 155, 622 P.2d 115, 119 (1981); *Disciplinary Board v. Kim*, 59 Haw. 449, 451, 583 P.2d 333, 335 (1978), we are not bound by the findings of the Board or by its hearing committee and will independently consider all testimony and evidence in the record. *Disciplinary Board v. Bergan*, 60 Haw. 546, 554–555, 592 P.2d 814, 819 (1979). In short, we review such cases *de novo*. The Board's recommendation as to discipline is entitled to greater weight than that of the hearing committee, *Bergan*, 60 Haw. at 554, 592 P.2d at 819. Thus, in this case, inasmuch as a stipulation regarding the proposed sanction was entered in lieu of a committee recommendation, the Board's recommended disposition is entitled to greater weight than that contained in the stipulation.

*Lau*, 79 Hawai'i at 204, 900 P.2d at 780.

### A. *Practice While Suspended*

As we have previously noted:

We view any practice of law while suspended with considerable concern. The purpose of suspension or disbarment is to

protect the public and to maintain the integrity of the profession and the dignity of the courts.... The rules of this court provide that an attorney who is disbarred or suspended as a result of a disciplinary proceeding may not resume the practice of law until allowed to do so by an order of this court. RSCH 2.17(a).

The integrity of the licensing and disciplinary processes relating to attorneys is directly challenged when a suspended attorney continues to practice law in violation of a suspension order. Such a challenge undermines the integrity of both the legal profession and the dignity of the courts, and we will not permit such a challenge to go unnoticed. As we have indicated, ABA Standard 8.1(a) provides that disbarment is generally appropriate when a lawyer intentionally or knowingly violates the terms of a prior disciplinary order. When an order of suspension is entered on the record and the rules clearly provide that the practice of law may not be resumed except pursuant to an order of this court, it strains credulity to characterize the practice of law while suspended as anything but knowing. For purposes of ABA Standard 8.2, practicing law while suspended is a "further act[ ] of misconduct." At a bare minimum, such violations and acts of misconduct harm the legal system, the profession, and the public by encouraging disrespect for the law and the courts and reinforce a perception of privilege and arrogance. Thus, we hold that practicing law while suspended or disbarred warrants the severe sanctions of suspension or disbarment.

*Lau,* 79 Hawai'i at 206–207, 900 P.2d at 782–783 (citations and footnotes omitted).

Lau's additional acts of practicing law while suspended, revealed by the further hearing, present no reason to depart from our prior holding. Indeed, the stipulated facts indicate that, when he stipulated to the facts about representing Alamedia that resulted in his second suspension on April 19, 1995, Lau had already met with and agreed to represent Tsugawa and that he did not disclose that representation to the ODC or this court. Lau's July 27, 1995 RSCH 2.16(d) affidavit, stating that he had complied with our July 25, 1995 suspension order and had not practiced law since March 7, 1995, was false. Lau continued while suspended to accept retainer fees from Tsugawa and to make court appearances on his behalf. In short, Lau disregarded our suspension order and our rule that a suspended attorney may not resume legal practice without an order from this court. Such blatant contempt for our rules and orders merits the severest sanction, inasmuch as that is the only sanction that will be sufficient to protect the public.

### B. *Conversion of Client Funds*

We have noted in other cases that a

> [r]espondent's conduct in misappropriating the funds of his clients violates the most basic rule of professional responsibility and requires the severest disciplinary sanction. *Office of Disciplinary Counsel v. Smith,* [62 Haw. 467, 617 P.2d 80 (1980) ]. This Court has in several ... cases upheld and reinforced the strict standard to which attorneys must be held in handling clients' monies. *Office of Disciplinary Counsel v. Smith, supra; Office of Disciplinary Counsel v. Johnson,* 62 Haw. 95, 611 P.2d 993 (1980); *Office of Disciplinary Counsel v. DeMello,* 61 Haw. 223, 601 P.2d 1087 (1979); ... *Disciplinary Board v. Kim,* [59 Haw. 449, 583 P.2d 333 (1978) ]; ... As stated in *Disciplinary Board v. Kim, supra,* 59 Haw. at 453, 583 P.2d at 336:
>
> > The funds of a client or others held by an attorney must be kept inviolate and only the strictest rules of conduct will be applicable. The attorney-client relationship involves the highest degree of trust and confidence. The duty of an attorney to the client must be discharged honorably and faithfully, governed by the most exacting principles of morality and justice....

*Office of Disciplinary Counsel v. Cashman,* 63 Haw. 382, 386, 629 P.2d 105, 107 (1981). This court has consistently held that misappropriation of client funds will result in disbarment, absent strong mitigating circum-

stances. *Smith*, 62 Haw. at 469, 617 P.2d at 81.

HRPC 1.15 sets out strict, specific, and detailed rules with regard to the handling of clients' funds. Rule 1.15 reinforces our prior case law regarding the importance of handling clients' and third persons' funds and other property appropriately. Compliance with Rule 1.15 is mandatory. Lau stipulated that his use of Tsugawa's unearned retainer, his failure to deposit Tsugawa's retainer into a designated trust account, his failure to maintain the funds in trust until earned, and his conversion of the funds to his own use and benefit violated HRPC 1.15(c) and (d)[4] and HRPC 8.4(b) and (c).[5]

### C. The Mitigating Factors are Insufficient To Avoid Disbarment

Lau stipulated to, and the Disciplinary Board adopted, the following mitigating factors:

1. [Lau] did not act with a dishonest or selfish motive.

2. [Lau] has exhibited a cooperative attitude toward these proceedings.

3. [Lau] has expressed remorse for his conduct.

4. [Lau] refunded the $1,500.00 which he had collected from Tsugawa.

4. HRPC 1.15 provides in relevant part:

   (c) A lawyer in possession of any funds or other property belonging to a client or third person, where such possession is incident to the lawyer's practice of law, is a fiduciary and shall not commingle such funds or property with his or her own or misappropriate such funds or property to his or her own use and benefit. A lawyer may deposit into a trust account funds reasonably sufficient to either pay bank charges or avoid paying bank charges on the account. Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited into the trust account, but the portion belonging to the lawyer or law firm must be withdrawn when due unless the right of the lawyer or law firm to receive the funds is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

   (d) All funds entrusted to a lawyer, except for "non-refundable retainers" earned upon receipt, shall be deposited intact into a trust account. The deposit slip shall be sufficiently detailed to identify each item. Retainers shall be treated as

In *Office of Disciplinary Counsel v. Silva*, 63 Haw. 585, 633 P.2d 538 (1981), we noted that where misconduct is severe and extensive and includes misappropriation of clients' funds, it would be difficult, if not impossible, to establish sufficiently strong evidence of mitigation to warrant a penalty lesser than disbarment. In *Silva*, the respondent represented the heirs of an estate and converted approximately $8,646 of the estate's funds to his own use and benefit. He also failed to pay estate bills, made misrepresentations to his clients, failed to surrender estate funds and render an accounting, stated that he could improperly influence a public official, gave false testimony, and failed to comply with subpoenas issued by the ODC. In representing a second and third client, the respondent converted more than $6,384 and most of $5,710, respectively, for his own use and benefit. The second client was able to recover all but ninety dollars of the original amount tendered to the respondent, and the respondent eventually delivered the $5,710 to his client. We noted that we had already "ruled that the fact that an attorney eventually returns money to his client does not lessen the attorney's culpability." *Silva*, 63 Haw. at 594, 633 P.2d at 545 (citing *Johnson, supra*). The respondent had committed other serious, severe, and extensive disciplinary violations, and we declined to view rehabilitation from

"non-refundable" only if agreed to in writing by the client. Absent such a written agreement, the funds shall be maintained in trust until earned.

5. HRPC 8.4 provides in relevant part:

   It is professional misconduct for a lawyer to:
   . . . .
   (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;
   (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation[.]
   Due to the stipulation to a violation of HRPC 8.4(b), we need not and do not determine whether we or the Disciplinary Board may determine such violations without a criminal judgment. We are aware that at least one commentary makes a distinction between a crime and a criminal act and opines "that acquittal, or dismissal of the criminal charge, should not preclude a disciplinary sanction based on the same conduct." *See* Geoffrey C. Hazard, Jr. and W. William Hodes, *The Law of Lawyering: A Handbook on The Model Rules of Professional Conduct* (2d ed.1997) § 8.4:301.

alcoholism as a mitigating factor where there was "no showing of any real progress by [the] [r]espondent in controlling [the] alcoholism." *Id.* at 595, 633 P.2d at 545.

We have noted that the ultimate sanction of disbarment is inappropriate where mitigating factors are involved. *See Kagawa, supra.* In *Kagawa,* a neglect case, we recognized marital difficulties as a mitigating factor where the "respondent was not guilty of serious, unethical conduct such as wilful misappropriation which would have warranted ... disbarment" and suspended the respondent for four years. In *Bergan, supra,* a case in which discipline was based upon a plea agreement for drug dealing, we considered service of a criminal sentence, the respondent's assurance that he would not repeat his misconduct, the respect and confidence of business associates, commitment toward self-rehabilitation, and candor, cooperation, repentance, a willingness to accept punishment, and voluntary psychiatric treatment with a favorable prognosis as sufficient to reduce a recommended disbarment to suspension for five years.

In *Smith, supra,* the respondent misappropriated client funds to his own purposes, falsely represented that he was the executor or his deceased client's estate, opened fictitious bank accounts to receive funds from the estate's debtors, misappropriated certain of those funds for his own use, and withheld material information from the probate court in an attempt to deceive the court. We concluded that the respondent's ability to repay misappropriated funds was not a defense to the misdeeds and that restitution to a client after the client took legal action to recover misappropriated funds did not mitigate against disbarment.

The mitigating factors in this case are not strong, and the aggravating factors weigh heavy. As previously noted, Lau has been informally admonished four times, and he has twice been suspended from the practice of law. The finding that Lau "did not act with a dishonest or selfish motive" appears contrary to the stipulated findings that he spent the unearned and misappropriated funds for his own use and benefit on matters unrelated to Tsugawa's case. We have already determined that use of a client's money is inexcusable. *See, e.g., Cashman, supra.* The fact that Lau has exhibited a cooperative attitude toward these proceedings is laudable, but it is not a mitigating factor where such cooperation has been coerced by our rules. *See* RSCH 2.12A. Likewise, refunding Tsugawa's money is laudable, but we have already rejected restitution as a mitigating factor. *See Kim, supra.* Thus, the only mitigating factor left is remorse, and given the many expressions of it in Lau's multiple disciplinary actions, it is a factor that cannot be accorded much weight.

In sum, the mitigating factors set out in this case fall far short of the strong mitigating factors required to preclude disbarment.

## V. CONCLUSION

For the reasons stated above, it is the judgment of this court that the respondent Collin K.C. Lau be disbarred and that he be required to take and pass the Multistate Professional Responsibility Examination, at his own expense, as a condition of reinstatement. A separate disciplinary order will be entered with the filing of this opinion.