195 P.3d 1197

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Burton D. GOULD, Respondent.**

**In Re Application for Reinstatement of Burton D. Gould, Petitioner.**

**No. 22239.**

Supreme Court of Hawai'i.

Nov. 20, 2008.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

The Disciplinary Board of the Hawai'i Supreme Court, pursuant to Rule 2.17(c) of the Rules of the Supreme Court of the State of Hawai'i (RSCH), submitted its report and recommendation on September 26, 2008, recommending that Petitioner Burton D. Gould's "Petition for Reinstatement be granted and that he be reinstated to the practice of law in the State of Hawai'i." For the reasons discussed below, we respectfully disagree with the Disciplinary Board's recommendation.

The Disciplinary Board concluded that Gould—while suspended—committed multiple violations of the following Hawai'i Rules of Professional Conduct (HRPC):

(1) *Rule 8.4(c)* (relating to conduct involving dishonesty, fraud, deceit, or misrepresentation);

(2) *Rule 8.4(a)* (violating a rule of professional conduct);

(3) *Rule 3.4(e)* (knowingly disobeying an obligation under the rules of a tribunal); and

(4) *Rule 5.5(a)* (practicing in a jurisdiction where doing so violates the regulation of the legal profession).

In our view, Gould's additional violations while suspended, coupled with his explanations in regard thereto, belie the Disciplinary Board's conclusion that Gould "has overcome the weaknesses which produced the earlier misconduct[.]" Moreover, given these additional violations, it appears that Gould's cavalier disregard of the ethical rules that led to the underlying five-year suspension has not abated. Consequently, we deny Gould's petition for reinstatement to the practice of law.

## I. BACKGROUND

### A. Gould's Five–Year Suspension

On September 15, 1999, the supreme court rejected the Disciplinary Board's recommended one year and one day suspension

and suspended Gould for five years.[1] The supreme court's order stated, in part:

> The record establishes *a cavalier disregard of clear rules* regarding settlement of claims, contingent fee agreements, false statements, and misrepresentation. But for the mitigating fact that Respondent Gould did not benefit financially, the egregious nature of Respondent Gould's actions would merit disbarment.

(Emphasis added.)

In addition to imposing the five-year suspension, the supreme court's order required "full compliance with RSCH [Rule] 2.16(d)" and "restitution to Fireman's Fund [of] all amounts [Gould] received ... that were not subsequently paid to his client, [the client's] health care providers, or others on [the client's] behalf." The supreme court denied Gould's motion for reconsideration and awarded costs to the Office of Disciplinary Counsel (ODC). The awarded costs were subsequently paid.

Gould's suspension commenced October 15, 1999. Gould was eligible to apply for reinstatement after April 15, 2002. *See* RSCH Rule 2.17(b) ("An attorney suspended from practice for more than one year may not apply for reinstatement until the expiration of at least one-half of the period of suspension."). On October 21, 2005, Gould petitioned the supreme court for reinstatement. On November 8, 2005, the petition was rejected without prejudice to filing with the Disciplinary Board, as required by RSCH Rule 2.17(c) ("Petitions for reinstatement by a disbarred or suspended attorney shall be filed with the Board and served upon Counsel.").[2] The Disciplinary Board received Gould's petition for reinstatement on January 22, 2007.

### B. *Gould's Actions While Suspended*

First, Gould did not timely comply with RSCH Rule 2.16. Indeed, his RSCH Rule 2.16(d) affidavit, due by October 25, 1999, was not filed until May 1, 2008. Second, between February 1, 2005 and March 8, 2006, ODC received the following complaints against Gould:

### 1. ODC 8165: Tina Bass & Barry Shapiro

According to the hearing committee's findings of fact (FOF) 12, Tina Bass and Barry Shapiro, tenants evicted from Gould's wife's Maui property, complained that Gould was using the designation "J.D." (or Juris Doctor) after his name on his office door.

In a letter dated February 21, 2005, Gould explained that he had two law degrees—a Bachelor of Science in Law (or B.S.L.) and a Bachelor of Laws (or L.L.B.). He indicated he had contacted Northwestern University School of Law and learned that Northwestern did not convert their L.L.B.s to J.D.s and promised to change "all signage ... to Burton D. Gould B.S.L., L.L.B."

In a letter to Gould, dated March 28, 2008, the ODC advised Gould that it had determined that Gould's "improper use of the signage, 'J.D.,' instead of 'L.L.B.,' *violated*" HRPC 8.4(c) ("conduct involving dishonesty, fraud, deceit, or misrepresentation") and HRPC 8.4(a) (violating a rule of professional conduct), but that no discipline would be imposed because neither Bass and Shapiro nor the legal system were substantively harmed and because Gould stopped using the "'J.D.' signage." (Emphasis added.)

---

1. Briefly, Gould had failed to prepare and execute a contingent fee agreement with his client in regards to a civil claim. Gould then—without his client's knowledge or authorization—settled the claim, signed his client's name on the release and settlement check, deposited the proceeds into his trust account, and filed a notice of dismissal with prejudice. In so doing, Gould violated HRPC Rules 1.2(a), 1.5(c), 3.3(a)(1), 4.1(a), and 8.4(c).

2. As previously indicated, this court, in imposing the underlying five-year suspension, explicitly stated that Gould's misconduct evinced "a cavalier disregard of clear rules[.]" Nevertheless, Gould apparently did not examine the rules to determine the proper procedure for seeking reinstatement. If he had, it is inconceivable how he could have believed that filing his petition for reinstatement with the supreme court was appropriate given the plain language of RSCH Rule 2.17(c), which clearly states that "[p]etitions for reinstatement by a disbarred or suspended attorney *shall be filed with the Board and served upon Counsel.*" (Emphasis added.)

### 2. ODC 8166: James L. Worley–Pali Kai Realtors

On December 29, 2004, under the letterhead of "Burton D. Gould, J.D.," Gould wrote to "Robert" [James] Worley of "Poly" [Pali] Kai Realty. The letter indicated that Gould was acting as "agent for Mr. Alan Bradbury and Ms. Geneen Summer[.]" The letter complained of mold and fungus in a purchased property and said "[t]hey would like to resolve this problem without the intervention of attorneys and protracted litigation." Worley wrote to ODC on January 17, 2005 "with the concern that Mr. Gould, by the tenure [sic] and the J.D. portion of his letter is possibly acting as an attorney[.]"

During the investigation of the Worley matter, the ODC requested from attorney William McKeon, attorney for the property's homeowner's association, information regarding his dealings with Gould. In response, McKeon provided copies of various correspondence, one of which was a November 11, 2004 letter from Gould, as agent for Bradbury and Summer, to McKeon, attempting to "clarify" the "Bradbury–Summer position" with regard to the mold/fungus problem. Upon verifying that Gould was suspended, McKeon wrote to Bradbury and Summer, on November 19, 2004, requesting that any further correspondence come from Bradbury, the unit owner, not Gould.

In response to the Worley complaint, Gould stated, in a letter dated February 7, 2005, that he had "agreed to act as [Bradbury's and Summer's] agent" and, with regard to "the use of J.D., [indicated] that is one of my degrees." In a subsequent letter to ODC, dated June 11, 2007, Gould—responding specifically to inquiries regarding his correspondence with McKeon—stated that he was "acting as an agent and not as an attorney" and that he had stopped acting as Bradbury's agent when McKeon informed him of McKeon's concerns.

As with the Bass/Shapiro complaint, ODC, on April 2, 2008, determined that Gould's "use of the improper signage, 'J.D.,' instead of 'L.L.B.,' *violated*" HRPC 8.4(c) ("conduct involving dishonesty, fraud, deceit, or misrepresentation) and HRPC 8.4(a) (violating a rule of professional conduct"), but that no discipline would be imposed because Worley, McKeon, and the legal system were not substantively harmed. The ODC's letter also recited that "our office was instructed to issue you a letter of caution regarding your violations of HRPC 8.4(c) and HRPC 8.4(a)."

### 3. ODC 8536: Paul A. Brooke, Esq./Edward Schmitt

Although Gould indicated that he stopped acting as an agent for Bradbury when McKeon—in November 2004—had expressed his concerns about dealing with Gould, he continued to act as agent for others. More specifically, a year later—in November 2005,—attorney Paul Brooke asked ODC for "clarification and instructions relative to interacting with" Gould about Edward Schmitt's worker's compensation claim. Brooke indicated that Gould had sent a settlement demand with regard to the claim and attached a copy of the demand to his request. Gould also wrote to First Insurance Company "as agent for Mr. Edward Schmitt." Brooke subsequently asked ODC to consider his letter a formal complaint.

In response to the Brooke complaint, Gould wrote in a letter dated January 26, 2006 that: (1) he had not held himself out as an attorney authorized to practice law; (2) "[t]he labor board allows agents without a law license to help injured workers"; (3) "[b]ut for ... Brooke's rudeness, [he] would not have known ... there was a 'problem' "; (4) he did not believe he had acted improperly; and (5) he believed he was "being treated unfairly and singled out for selective punishment because of [his] earlier mistake in judgment[.]"

In a letter dated April 2, 2008, the ODC concluded Gould's letter to First Insurance Company *violated* HRPC 3.4(e) ("knowingly disobey[ing] an obligation under the rules of a tribunal"), HRPC 5.5(a) ("practic[ing] law in a jurisdiction where doing so violates the regulation of the legal profession"), and HRPC 8.4(a) (violating the rules of the profession) and imposed an informal admonition.

### 4. ODC 8549: DLIR/Gwendolyn Johnson

On March 8, 2006, Gould advised the DLIR that he represented Gwendolyn John-

son and sought a hearing to determine whether Johnson was entitled to medical care. The letter contained no academic degree designations. Via letter dated March 9, 2006, the DLIR director asked Disciplinary Counsel, "Is a suspended attorney allowed to represent claimants?" Johnson also applied for a hearing and noted her "attorney, Burton Gould, will be present."

In response to ODC's inquiry, Gould asserted that one could "act as an agent and not do any act that constitutes the practice of law," but that he had "decided not to act as an agent for anyone at the Department of Labor."

In a letter dated March 16, 2006, Special Assistant Disciplinary Counsel Alvin Ito advised Gould it was improper for Gould "to represent an individual in a workers' compensation hearing, or to perform any acts that constitute the practice of law."[3] In an undated letter from Gould to attorney Robert Chong (presumably, employer's attorney), Gould essentially indicated he was "aiding" Johnson, but "not representing her," and expressed a willingness to convey "a fair offer." Chong declined to communicate with Gould.

By letter dated April 8, 2008, ODC informed Gould that his letter to the DLIR *violated* HRPC 3.4(e) ("knowingly disobey[ing] an obligation under rules of a tribunal"), HRPC 5.5(a) ("practic[ing] law in a jurisdiction where doing so violates the regulation of the legal profession"), and HRPC 8.4(a) (violating the rules of professional conduct) and imposed an informal admonition.

### C. Gould's Petition for Reinstatement

Upon receipt of Gould's petition for reinstatement, a hearing committee was appointed and hearings were had in the usual course.[4] Gould testified and presented witnesses on his own behalf; Michael Lee appeared on behalf of ODC. The hearing committee's findings summarized the testimony

provided by Gould and his witnesses with regard to compliance with supreme court orders to pay costs and restitution, rehabilitation, fitness to practice, and competence. The Committee concluded Gould had met his burden of proving, by clear and convincing evidence, reimbursement for costs, compliance with other court-ordered requirements, including restitution payment, rehabilitation, fitness to practice, competence, and compliance with orders and rules.

The Committee acknowledged Gould's RSCH Rule 2.16(d) affidavit was not timely and noted "he was suffering from a severe reactive depression." With regard to compliance with RSCH Rule 2.17(a), the Committee concluded:

> Applicant substantially complied with RSCH [Rule] 2.17(a), *except for a period of time where he acted as an agent for: Alan Bradbury, Gwendolyn Johnson, and Edward Schmitt and wrote several letters on their behalf.* Applicant believed that in a principal-agent relationship, the principal controlled the relationship, which distinguished this from an attorney-client relationship, where the attorney allegedly controls the relationship. Applicant also believed that he could engage in a principal-agency relationship in workers' compensation matters, since DLIR Hearings Officer Kevin Nishihara indicated that there was no problem with Applicant helping an injured worker as an agent. Applicant expressed remorse for his conduct; ceased his actions after it was brought to ODC's attention, did not appear at any court or administrative hearings for[,] and did not collect any funds from[,] the above-mentioned individuals, and resolved these matters with ODC.

(Emphasis added.) The Committee acknowledged Gould's compliance with the rules might "be less than perfect," but concluded he had "established all elements for rein-

3. In a letter dated April 3, 2006 from DLIR Director Nelson Befitel to ODC, Befitel indicated that, although DLIR allows non-attorneys to represent a party in workers' compensation administrative hearings, "DLIR [would] defer[ ] to ODC on whether a suspended attorney is prohibited from appearing at DLIR administrative hearings under state laws governing the practice of law." FOF 20.

4. The initial hearing committee members were Gilbert D. Butson, Chair; Della Au Belatti, and Dennis Lombardi. Belatti was disqualified and Sharon Wong was appointed in her place.

statement ... set forth in RSCH [Rule] 2.17(b)."

The Disciplinary Board "accepted and adopted" the Committee's FOFs, Conclusions of Law (COLs), and recommendation.

## II. DISCUSSION

We disagree with the conclusions of the Committee and Board that Gould established the requirements for reinstatement. In our view, Gould's words and actions establish otherwise.

In *Fought & Co., Inc. v. Steel Engineering & Erection, Inc.*, 87 Hawai'i 37, 951 P.2d 487 (1998), we explored the phrase "practice of law." In part, we said:

> The legislature recognized that
>
> > the practice of law is not limited to appearing before the courts. It consists, among other things of the giving of advice, the preparation of any document or the rendition of any service to a third party *affecting the legal rights ... of such party,* where such advice, drafting or rendition of service requires the use of any degree of legal knowledge, skill or advocacy.
>
> Similarly, while it has explored the concept's dimensions, this court has never formally defined the term "practice of law." In *In re Ellis,* 55 Haw. 458, 459–60, 522 P.2d 460, 461–62 (1974), for example, an unlicensed individual, who had "filed ... numerous papers, signed by him, including but not limited to, various petitions, requests for service, complaints, claims, joinder in pleadings and cross-claim, appearances, objections to motions, suggestions of recusal, motions to disqualify opposing counsel, other and novel forms of legal pleading—together with legal memoranda and appendices thereto," was found to have engaged in the unauthorized practice of law. In *State v. Gilbert,* 68 Haw. 226, 708 P.2d 138 (1985), a person who wrote to a licensed attorney, claiming to represent a client, and signed the letter as "attorney for" the client was determined to have engaged in the practice of law. More recently, in *Office of Disciplinary Counsel v. Lau,* 85 Hawai'i 212, 941 P.2d 295 (1997),

this court held that agreeing to represent a client and accepting retainer fees, appearing before the Hawai'i Paroling Authority on behalf of a client, preparing and signing, as a client's attorney, a motion to continue a case, and making an appearance in court as counsel for a client were aspects of "the practice of law." *Id.* at 212–13, 215, 941 P.2d at 295–96, 298.

> Our holdings in *Lau* and the other cases cited above are not incompatible with the proposition that the *"practice of law" entails far more than merely appearing in court proceedings.* Moreover, other jurisdictions, in seeking to define the "practice of law," have reached a similar conclusion. The California Supreme Court, for example, has expressed the position that, for the purposes of that state's statute restricting the practice of law to "active member[s] of the State Bar," such practice includes "'the doing and performing [of] services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of procedure,' [the rendering of] legal advice[,] and legal instrument and contract preparation[.]" *Birbrower, Montalbano, Condon & Frank, P.C. v. Superior Court of Santa Clara County,* 17 Cal.4th 119, 70 Cal.Rptr.2d 304, 308, 949 P.2d 1, 5 (1998) (quoting *People ex rel. Lawyers' Institute of San Diego v. Merchants Protective Corp.,* 189 Cal. 531, 209 P. 363 (1922)).

*Id.* at 45–46, 951 P.2d at 495–96 (emphases added) (some citations omitted) (brackets in original).

 The Committee found:

> [Gould] *erroneously believed* that he was not engaging in the unauthorized practice of law when he agreed to serve as agent for his personal friend, Alan Bradbury, former clients, Gwendolyn Johnson and Edward Schmitt, and his belief was due to: (i) that in a principal-agent relationship, the principal controlled the relationship, which distinguished this from an attorney-client relationship, where the attorney allegedly control the relationship; and (ii) Kevin Nishihara, DLIR Hearings Officer, informing [Gould] that there was no prob-

lem with [Gould] helping an injured worker as an agent.

FOF 56(n) (emphasis added). Indeed, the attorney-client relationship **is** a principal-agent relationship. *See, e.g., Shin v. Shin*, 96 Hawai'i 122, 127, 27 P.3d 398, 403 (App.2001) ("the attorney-client relationship is that of principal and agent and, although an attorney cannot compromise and settle a client's claim without specific authorization to do so, the client is bound by his or her attorney's acts and/or failures to act within the scope of attorney's authority. *Alt v. Krueger*, 4 Haw. App. 201, 207, 663 P.2d 1078, 1082 (1983)"). We are, therefore, perplexed by the Committee's recommendation to grant reinstatement, especially in light of its conclusion that Gould "substantially complied with RSCH [Rule] 2.17(a), *except for a period of time where he acted as an agent of Alan Bradbury, Gwendolyn Johnson, and Edward Schmitt and wrote several letters on their behalf.*" COL 73 (emphasis added). It is apparent that, notwithstanding Gould's attempts to distinguish principal-agent from attorney-client relationships, it is clear that Gould's representation of Bradbury, Johnson, and Schmitt constituted the practice law while he was suspended. The Committee, as evinced by its FOF 56(n) quoted *supra,* agreed, having found that Gould "*erroneously believed* that he was not engaging in the unauthorized practice of law when he agreed to serve as agent[.]"

▮▮▮ As more aptly stated by this court in *Office of Disciplinary Counsel v. Lau* [hereinafter *Lau II* ], 85 Hawai'i 212, 941 P.2d 295 (1997):

> The integrity of the licensing and disciplinary processes relating to attorneys is directly challenged when a suspended attorney continues to practice law in violation of a suspension order. Such a challenge undermines the integrity of both the legal profession and the dignity of the courts, and we will not permit such a challenge to go unnoticed. As we have indicated, ABA Standard 8.1(a) provides that disbarment is generally

appropriate when a lawyer intentionally or knowingly violates the terms of a prior disciplinary order. *When an order of suspension is entered on the record and the rules clearly provide that the practice of law may not be resumed except pursuant to an order of this court, it strains credulity to characterize the practice of law while suspended as anything but knowing.* For purposes of ABA Standard 8.2, practicing law while suspended is a "further act[ ] of misconduct." *At a bare minimum, such violations and acts of misconduct harm the legal system, the profession, and the public by encouraging disrespect for the law and the courts and reinforce a perception of privilege and arrogance.* Thus, we hold that practicing law while suspended or disbarred warrants the severe sanctions of suspension or disbarment.

*Lau,* 79 Hawai'i at 206–07, 900 P.2d at 782–83 (citations and footnotes omitted).

... Such blatant contempt for our rules and orders merits the severest sanction, inasmuch as that is the only sanction that will be sufficient to protect the public.

*Lau II,* 85 Hawai'i at 215, 941 P.2d at 298 (emphases added).

Gould's practice of law while suspended was treated with uncharacteristic lightness by ODC and the reviewing board, and Gould will not, apparently, be the subject of further disciplinary proceedings. Gould's actions, however, must be considered in light of RSCH Rule 2.17(a)'s clear prohibition on practicing while suspended[5], RSCH Rule 2.17(b)'s criteria for reinstatement, and our previously expressed concern about Gould's "cavalier disregard of clear rules." Under RSCH Rule 2.17(b):

> An attorney suspended from practice for more than one year shall not be reinstated unless he or she can show proof of the following by clear and convincing evidence: *rehabilitation, fitness to practice law, competence* and *compliance with all applicable disciplinary or disability orders and*

---

5. RSCH Rule 2.17(a) states: "No suspended or disbarred attorney may resume practice until reinstated by order of the supreme court except as provided in Rule 17(d) [ (related to administrative suspensions for nonpayment of bar dues) ]."

*rules,* and *compliance with any other requirements imposed by the supreme court,* which may include the successful completion of requirements for passing the bar examination.

No suspended or disbarred attorney shall be eligible for reinstatement except upon *a showing that he or she has reimbursed both the Board for all costs ordered* including those incurred under RSCH [Rule] 2.20, if any, and the Lawyers' Fund for Client Protection for monies paid out on account of the attorney's conduct, together with interest at the Hawai'i statutory judgment rate.

(Emphases added.) We address each of aforementioned areas as it relates to Gould's showing before the Committee.

### 1. Rehabilitation

■ In attempting to prove rehabilitation, Gould promised the Committee he would, in sum:

- get written authority to settle matters for a client;
- communicate settlement offers to clients in writing;
- dismiss lawsuits only with the client's written authority;
- have his clients sign release or settlement agreements; and
- not use a power of attorney to sign releases and settlements for clients.

In response to examination before the hearing committee, Gould also said he was remorseful about his prior conduct "and would apologize to [his former client] for his prior conduct, if she was present at the hearing."

■ To the extent that Gould's promises show cognizance of the rules and his willingness to comply with them, the most that can be said is that Gould's knowledge of the requirements of the HRPC are limited to those governing settlement matters, *i.e.,* those rules that he violated and which served as the basis for the underlying five-year suspension. In fact, Gould's improper use of signage in violation of HRPC 8.4 and attempts to represent clients and negotiate their claims while suspended in violation of Rules 3.4, 5.5, and 8.4 demonstrate his limited knowledge of our ethical rules. Moreover, as previously stated, Gould was made aware that some people might view his actions as engaging in the unauthorized practice of law when he learned of McKeon's and Worley's concerns. Nevertheless, despite those concerns, Gould apparently never questioned whether there might be some merit to the view that he was engaging in the unauthorized practice of law. A prudent person in Gould's position would, at minimum, have sought advice from the ODC so as to avoid risking any further ethical violations. Indeed, as observed by this court in *Lau II,* "[w]hen an order of suspension is entered on the record and the rules clearly provide that the practice of law may not be resumed except pursuant to an order of this court, it strains credulity to characterize the practice of law while suspended as anything but knowing." *Lau II,* 85 Hawai'i at 215, 941 P.2d at 298. Finally, Gould's practicing while suspended shows his continuing cavalier disregard of the rules governing attorneys. Even if we take at face value Gould's explanation that his representation was merely that of principal-agent, such explanation evinces a clear and substantive lack of understanding about the nature of the attorney-client relationship.

### 2. Fitness to Practice Law

With regard to fitness to practice law, Gould testified:

- he read publications, such as the Pacific Reporter, Hawaii Reports, Annotated Law Reports, and Corpus Juris Secundum;
- he was current with statutory and case law in areas of workers' compensation and personal injury; and
- he tried to keep current with the HRPC.

Gould also described workers' compensation personal injury appellate cases, and he responded to questions about application of the HRPC.

### 3. Competence & Compliance with Disciplinary Orders and Rules

In addition to testifying on his own behalf, Gould (and the committee members) solicited testimony from Attorney Andrew Von Sonn,

John P. Dunbar, Peter Hart, and Gould's secretary, Amy Yorke. In sum, Yorke testified that she notified each of Gould's clients about Gould's suspension, advised the clients "to consider Von Sonn's services or seek substitute counsel," and helped Gould close his trust and business accounts. According to Gould, he testified he did not "have anybody's money" in accounts, he did not know what he did with his trust account, and that "maybe [Yorke] closed" his trust and business account.

With regard to the late filing of the RSCH Rule 2.16(d) affidavit, Gould acknowledged he was supposed to file the affidavit by October 25, 1999, but testified he "was depressed, ... clinically depressed" and that he filed the affidavit in 2008 at Assistant Disciplinary Counsel Michael Lee's suggestion. Although Gould's psychiatrist wrote that Gould suffered from depression in October 1999, there is no indication in the record that his depression continued from that time until he filed the required-affidavit in May 2008, over eight years after it was due. Thus, in sum, Gould's testimony verifies that he did not comply with yet another rule, *i.e.,* RSCH Rule 2.16(d)—again, demonstrating a continuing cavalier disregard for rules.

#### 4. Other Requirements Imposed by the Supreme Court

The Committee found that Gould complied with other supreme court requirements; specifically, the requirement to pay restitution to Fireman's Fund. The finding is supported by a letter from a Fireman's Fund "Claims Clerical Sr. Associate" that attests to the payment.

#### 5. Reimbursement for Costs

The Committee found, and the supreme court's records verify, that Gould paid the costs imposed by the supreme court's suspension order and subsequent cost order.

Based on the foregoing, the Committee concluded that Gould "*substantially* complied with RSCH [Rule] 2.17(a)," COL 73 (emphasis added); however, we fail to see how the Committee could so conclude and, at the same time, state, "*except for* a period of time where he acted as an agent of Alan Brad-

bury, Gwendolyn Johnson, and Edward Schmitt and wrote several letters on their behalf." COL 73 (emphasis added). Moreover, although Gould has seemingly stopped the representations set out above when concerns about them were raised, any conclusion that he has stopped practicing while suspended is undercut by his own testimony that he is still helping people, but that he is not leaving a paper trail. Specifically, Gould testified:

> Q. [ (By Butson) ]: Can you understand from these kind of comments, why people might get the impression that you continued to practice law in a sub rosa-type setting?

> A. [ (By Gould) ]: Yes, sir. That's why I stopped. I—I wasn't trying to practice law. Again, the Labor Board, those Labor Board cases was the only case outside of my friend, Alan Bradbury, where I wrote a letter as an agent. There isn't any paper I generated other than that, because I saw how that was received or perceived, and I said why help anybody. *But I still help people, but not with any paper-generating or in any legal manner.*

> Q. So you don't leave a paper trail?

> A. Well, yeah, but *I don't leave a paper trail* because I don't—I don't—I don't really benefit from any of this except helping somebody else. I mean it's just—I made some mistakes, and I agree, and I paid for my big mistakes.

Based on a review of the FOFs and COLs, the record, and transcripts in this case, we conclude that Gould has not met his burden of showing, *by clear and convincing evidence,* that his petition for reinstatement should be granted.

### III. *CONCLUSION*

In light of the foregoing and given this court's "ultimate responsibility to regulate the practice of law in this state and to ensure that the integrity of the profession is maintained by disciplining attorneys who indulge in practices inconsistent with the high ethnical standards demanded of all members of

the bar," *Akinaka v. Disciplinary Bd. of the Hawai'i Supreme Court,* 91 Hawai'i 51, 57–58, 979 P.2d 1077, 1083–84 (1999) (internal quotation marks and citations omitted), we cannot agree with the Board's recommendation to grant Gould's petition for reinstatement. Accordingly, Gould's petition for reinstatement to the practice of law in the State of Hawai'i is denied.